772 A.2d 1188

Elliott CUNNINGHAME, Personal Representative
of the Estate of Elizabeth Cunninghame,

v.

Todd Samuel CUNNINGHAME and Christina Gwynne
Cunninghame, Co–Personal Representatives of
the Estate of Ferguson Cunninghame.

No. 109, Sept. Term, 2000.

Court of Appeals of Maryland.

May 11, 2001.

Reconsideration Denied June 21, 2001.

David A. Skomba (Franklin & Prokopik, on brief), Baltimore, for petitioner.

Richard E. Hagerty (Bradford S. Bernstein of Miles & Stockbridge P.C., on brief), Rockville, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

Elliott Cunninghame, executor for the estate of Elizabeth Cunninghame,[1] petitioner, filed a claim against the estate of Ferguson Cunninghame. The claim was denied by the co-personal representatives.[2] A Petition for Allowance of Claim was filed in the Orphans' Court for Montgomery County. The Orphans' Court disallowed the Petition for Allowance of Claim, finding that the claim was barred by the limitation on presentation of claim statute codified in Maryland Code (1974, 2001 Repl.Vol.), section 8–103 of the Estates and Trusts Article.[3]

---

**1.** Elizabeth Cunninghame had been a resident of the State of New Jersey at the time of her death; thus her will was being probated in New Jersey. A person named in a will being probated in New Jersey is still referred to as an executor, not a personal representative.

**2.** Christina Gwynne Cunninghame and Todd Samuel Cunninghame, the children of Ferguson Cunninghame, became the co-personal representatives of the estate, although neither was named in Ferguson Cunninghame's Last Will and Testament.

**3.** We cite this volume of the Estates and Trusts Article even though this action was filed in 1999. Statutes relevant to this appeal have not been changed by the 2001 Replacement Volume from their 1999 form.

Petitioner filed an appeal to the Court of Special Appeals. In affirming the judgment of the Orphans' Court, that court held that petitioner failed to prove his claim before the Orphans' Court; therefore, petitioner had failed to prove that the Orphans' Court committed prejudicial error by disallowing petitioner's claim because it had not been filed within six months. Petitioner has presented two questions for which we granted certiorari:

 I. Did the Trial Court err by finding that the claim of the Estate of Elizabeth Cunninghame against the Estate of Ferguson Cunninghame was time barred?

 II. Did the Court of Special Appeals err in applying the doctrine of harmless error and in not addressing the timeliness/presentment issue?

We answer no to question I. We hold that a claim was not presented by Elizabeth Cunninghame or the estate of Elizabeth Cunninghame within the "Limitation on presentation of claim." period codified at Md.Code (1974, 2001 Repl.Vol.), section 8–103 of the Estates and Trusts Article. We therefore affirm the decision of the Orphans' Court for Montgomery County. Because we answer question I in the negative, we need not directly resolve question II, although it will be the subject of some discussion.

## I. Facts

Ferguson Cunninghame (hereinafter Ferguson) died on July 5, 1998. Elizabeth Cunninghame died on August 11, 1998. On September 9,1998, the Last Will and Testament of Ferguson Todd Cunninghame was filed with the Register of Wills for Montgomery County. The will, which was executed on October 28, 1977, nominated and appointed Ferguson's former wife, Donna Rae Holt Cunninghame (hereinafter Donna) to serve as personal representative of his estate. If Donna was unable to serve, then the will nominated and appointed Ferguson's friend, Benjamin Baird, Jr., to serve as personal representative of his estate. When the will was filed on September 9, 1998, a Renunciation and Consent to Appointment of Co–Personal Representatives was also filed. The Renunciation

and Consent to Appointment of Co–Personal Representatives stated that Donna and Benjamin Baird, Jr., renounced their right to serve as personal representative of Ferguson's estate and asked that Ferguson's surviving children, Christina Gwynne Cunninghame (hereinafter Christina) and Todd Samuel Cunninghame (hereinafter Todd), be appointed co-personal representatives. The estate of Ferguson was opened on the same date.

On or around July 14, 1998, Todd, who at that time was neither a personal representative of the estate of Ferguson, nor named in Ferguson's will as a personal representative, commented to his aunt, Elizabeth Ferguson (hereinafter Elizabeth), that she send to him "any bills incurred while my father was in the hospital." Elizabeth sent a letter dated July 24, 1998 (the letter) to Ferguson's former wife, Donna, and to his son, Todd. The letter stated:

Enclosed are the statements that were obligations that Ferg couldn't handle while he was hospitalized. *Also* the tally of what obligations I felt that I had to help keep him afloat for the past couple of years—loan repayment and taxes—If you need a more formalized accounting, please let me know. [Emphasis added.]

Enclosed with the letter was a second page with a list of check numbers and amounts. No further elaboration was submitted, such as what the checks were for. The total amount of the checks submitted by Elizabeth was $36,517.00. There was no indication that the letter was being sent to either Todd or Donna as representatives of Ferguson's estate. At the time of the letter, neither the will, nor the renunciation, had been filed. Neither Todd, nor Donna, responded to Elizabeth's letter.

As we indicated, on August 11, 1998, Elizabeth died. At the time of her death, the estate of Ferguson had not been opened. The persons named in Ferguson's will as personal representatives had not filed any renunciation of their rights to be appointed, and Todd had not yet been appointed a co-personal representative. At the time of Elizabeth's death,

persons, other than Todd, were designated in Ferguson's will, as personal representatives.

Elliott Cunninghame (hereinafter Elliott), the brother of Elizabeth and Ferguson, apparently was appointed executor of Elizabeth's estate.[4] On April 7, 1999, Elliott, allegedly as executor for the estate of Elizabeth, filed a claim against Ferguson's estate for $36,517.00, which was the amount indicated by the list of checks enclosed with the letter dated July 24, 1998. On April 28, 1999, a Notice of Disallowance was received by the Register of Wills for Montgomery County. The Notice disallowed the claim of the estate of Elizabeth for the $36,517.00.

On June 29, 1999, a Petition for Allowance of Claim was filed in the Orphans' Court for Montgomery County.[5] Elliott, as the alleged executor of the estate of Elizabeth, petitioned the Orphans' Court to allow the claim for $36,517.00. Elliott alleged that Elizabeth had loaned Ferguson the $36,517.00 and that Ferguson had promised to repay the loan. No mention

---

4. We were unable to find any evidence in the record to verify whether Elliott was actually appointed executor of Elizabeth's estate. Therefore, we also do not know when this appointment, if it did occur, actually took place, and whether Elliott was appointed in Elizabeth's estate within the six-month period for the filing of a claim in Ferguson's estate.

5. Section 8–107(b), "Disallowance of claim" is the statutory provision that controls the filing of petitions challenging disallowances of claims. It is applicable in this case. It provides, in relevant part, as follows:

> If the claim is disallowed in whole or in a stated amount, the claimant *is forever barred* to the extent of the disallowance unless he files a petition for allowance ... or commences an action. ... The action shall be commenced within 60 days after the mailing of notice [of the disallowance] by the personal representative. [Emphasis added.]

> In the present case, the records reflect that the Notice of Disallowance was mailed on the 27th of April 1999, was date stamped as received by the Register of Wills on the 28th of April, 1999, and entered on the 29th of April 1999. Petitioner did not file his petition, his action, until June 29, 1999–sixty–one days after the latest of the dates the disallowance was filed. No issue was raised by respondent that the claim was "forever barred."

was made as to whether Elliott had any knowledge of the communications, oral or written, between Todd and Elizabeth.

On October 22, 1999, a hearing was held on the Petition for Allowance of Claim before the Orphans' Court for Montgomery County. At the hearing, Elliott alleged that Elizabeth had loaned Ferguson money over the final years of his life, that there was an agreement for Ferguson to repay the money, and that Elliott was filing a claim against the estate because Ferguson had not repaid the loan. Elliott stated at the hearing that there was not any written evidence of an agreement to repay the loan.[6]

Respondent stated that the claim should be disallowed for several reasons. First, respondent alleged that the claim violated the limitation on presentation of claim statute because it was not filed within six months in violation of Md.Code (1974, 2001 Repl.Vol.), section 8–103 of the Estates and Trusts Article.[7] Second, respondent alleged that even if the claim was not barred by the limitation on presentation of claim

---

**6.** We have been unable to discern from the record any admissible evidence in respect to when, how, or whether Elliott, at the time the claim was filed, had knowledge of any agreements to repay, if any existed—outside of mere knowledge that Elizabeth had negotiated the checks on the list.

**7.** Respondent stated that section 8–103 requires any claim to be filed within six months after the date of the decedent's death. In the case *sub judice*, Ferguson died on July 5, 1998 and the claim was filed by the estate of Elizabeth on April 7, 1999, over nine months after Ferguson's death.

It is clear from the transcript of the proceedings in the Orphans' Court that petitioner, and petitioner's counsel, were totally unaware of the period in which the statute required claims to be filed. When respondent's counsel raised the issue, petitioner's counsel responded, "That is the first I have heard of [it]. . . . It has never been raised before this morning. . . . It is my understanding that the law is based on when the disallowance is made, then that is when the statute runs for the claim." After some discussion, the court noted petitioner's counsel's surprise and asked him if he wanted time to "look at this [the statute]." Later, petitioner asserted that he had filed the claim timely because Elizabeth's letter to Todd constituted a filing.

As we noted earlier, *supra* footnote 6, petitioner did not timely file the petition challenging the disallowance of his claim.

statute, respondent has "some substantive problems with the claim, and do[es] not believe that they are going to be able to prove that in fact the loan was made. . . ." Petitioner responded, as we indicated, *supra*, to respondent's claim that petitioner had violated the limitation on presentation of claim statute by stating that even if the claim filed by the estate of Elizabeth was after the six-month "statute of limitations," the letter sent by Elizabeth to Todd was within the six-month period and was the presentment of a claim to the person who, although not the personal representative when the letter was sent, would eventually become a co-personal representative.

Three witnesses were called during the hearing—Todd, Elliott, and Reverend Gordon Kathy. Todd testified that he "requested originally from my aunt any bills incurred while my father was in the hospital to be sent to me." He further testified that he received a letter [8] from his aunt; however, he was not the co-personal representative of Ferguson's estate when he received the letter. Elliott testified that photocopies of various checks that petitioner wanted admitted into evidence were from Elizabeth's account.[9] The last witness was Reverend Gordon Kathy,[10] who testified that he had discussions with Ferguson about Ferguson's finances. Reverend

---

**8.** The letter also contained a second page that contained a list of checks, the amount of each check, and the date that the check was written. As we have indicated, *supra,* the total of all of the checks listed was $36,517.00.

**9.** The photocopies of the checks were not admitted into evidence. Respondent objected to the admission of the photocopies on the ground that the photocopies were not authenticated and that they were hearsay. The Orphans' Court sustained respondent's objection. Although the photocopies of the checks were not admitted into evidence, the photocopies were submitted to this Court in the extract. The checks provide no evidence as to whether they were intended as a gift or a loan. We do note, however, that one of the checks submitted, that petitioner contends was a loan, stated "Merry Christmas" on the memo line of the check-a greeting that would support a reasonable inference that the check was a gift and not a loan.

**10.** Reverend Kathy was not Ferguson's pastor, but was his neighbor and "good friend." Reverend Kathy's testimony was not relevant in respect to the "timeliness" issue.

Kathy testified that two to three years before Ferguson's death, Ferguson told him that since Ferguson had been divorced, he was unable to pay his mortgage and that Elizabeth was paying the mortgage for him. He also testified that Ferguson planned on repaying Elizabeth and Ferguson was being pressured to sell his house to repay her. On cross-examination, Reverend Kathy stated that Ferguson never told him an amount that he owed Elizabeth and Reverend Kathy never saw any form of written agreement between Ferguson and Elizabeth requiring Ferguson to repay Elizabeth for any money that she gave to him.

At the end of the testimony before the Orphans' Court, respondent argued that petitioner had failed to meet his burden by proving the amount of the claim or petitioner's entitlement to a claim. Respondent also reiterated his claim that petitioner had violated the limitation on presentation of claim statute. Respondent alleged that the letter from Elizabeth to Todd failed to establish that there was a loan between Ferguson and Elizabeth and that the language in the letter was equally consistent with a gift from a sister to a brother as it was to a loan. Respondent also alleged that the letter was not sufficient as a presentment of a claim and therefore the limitation on presentation of claim statute acted as an absolute bar to the claim filed by Elliott on behalf of Elizabeth's estate. Petitioner alleged that the letter alone was enough to establish a claim against Ferguson's estate.

The Orphans' Court held that the "statute of limitations" applied to the claim filed by Elliott and the letter from Elizabeth to Todd was not a sufficient presentment of a claim. The Court found that the claim must be presented to a personal representative or a Register of Wills and because petitioner had not complied with this requirement within the period allowed by the "statute of limitations," the claim must be barred. Despite the fact that the Orphans' Court had barred the claim based upon a violation of the "statute of limitations," the Orphans' Court went on and decided that if the "statute of limitations" was not applicable, the Court would have found that petitioner had established that there was loan

and that the checks listed with the letter were in fact amounts loaned to Ferguson. The Orphans' Court stated that:

The law is that if the claim was not presented within the 6 month period of time, then it is time barred. It is a statute of limitation. It is a very harsh law.

There is lots of reasons for it which I won't go into, but nonetheless, the Legislature has said what it said, and then it said, "This is how you present it". You present your claim to the PR [personal representative] or you present your claim to an appropriate register of wills. Those are the two ways to do it.

Then, it goes on to say what the claim needs to include, but I don't focus on that because in my view, the dispositive issue is presentation.

Now, there wasn't a presentation to the Court in any fashion. There wasn't a presentation to the PR because when this note—assuming this note qualifies otherwise—when it was given to the eventual PR, he wasn't the PR.

So, the requirements of presentation have not been met. So, I look at the issue of, well, what about the notion of substantial compliance and can the plaintiff avoid the effects of statute of limitations by saying substantial compliance?

Frankly, that is what I struggled over. The conclusion that I come to is they cannot, that this substantial compliance would deal with the form of the notice in my view, whether the form was, you know, verified or not, or whether it had the other requirements of the form of the notice, I think, is what substantial compliance is about.

I think that I have no discretion when the notice was not given to either the Court or the PR and unequivocally, that is the case.

. . .

I concluded that I have no discretion to extend or modify the presentation requirements that the statute has set forth, even though that sometimes and probably in this case, results in a harsh application of the statute of limitations.

But of course, more often than not, whenever the statute of limitations are applied, it is harsh. Therefore, the motion to disallow the claim will be granted, or the notice to disallow, whatever the right word is on that.

But let me go on since there may be some further action in this regard as to my take on the substantive issues presented in this case.

I find, and I am going to resolve that in, in favor of the claimant [petitioner]. Although again, I think that is a very, very close call. The letter is ambiguous. The letter speaks in a way that you could conclude—by the letter, I mean the letter of July 24th—that you could conclude that it was a gift, or that at least that it wasn't a loan.

But then on the other hand, there is a language that suggests that it is a loan, especially the language at the bottom there, which says if you need a more formalized accounting, please let us know.

I mean, that certainly is suggestive of a loan as opposed to a gift. Then, of course, I have the testimony of the pastor who indicate a that—well, who said what he said which certainly supports the notion that it is a loan.

I think that the claimant did establish that there was a loan, and that these payments were a loan. The more difficult question is, How much was the loan? Here, all I have is just simply a list of payments, and it is thin.

I mean, I think that is really thin evidence of a loan. I tried to—you know, I struggled with the notion of what is speculative and what is there by a preponderance of the evidence.

I resolved that struggle in this case by saying that it is thereby a preponderance of the evidence, and that it is more likely than not that these numbers contained on the second page of the first exhibit are in fact amounts that were loaned to the decedent.

So, having said that, if I had reached that issue, that is how I would resolve it. I don't reach the issue because of the reasons I have already said.

I do think the statute of limitations applies, and so therefore, the Court will grant the motion or request to disallow the claim.

Before the Orphans' Court, petitioner never mentioned the provisions of Maryland Code (1974, 2001 Repl.Vol.), section 6–105 of the Estates and Trusts Article,[11] which provides that when done in good faith, the acts of a person who ultimately becomes a personal representative, might constitute acts of a personal representative. Petitioner relied exclusively on provisions found in Title 8, "Claims of Creditors," of the Estates and Trusts Article. Thus, the provisions of section 6–105 were not before the Orphans' Court and were not considered by Judge Donohue, sitting as the Orphans' Court, in his decision. Assertions under section 6–105 were made for the first time on appeal to the Court of Special Appeals. The majority in that court, for whatever reason, did not consider section 6–105. The dissent, in large part, relies on section 6–105 and on Maryland Code (1974, 2001 Repl.Vol.), section 7–101(a) of the Estates and Trusts Article,[12] also raised for the first time before the Court of Special Appeals. Accordingly, we shall hold that issues relating to section 6–105 (and section 7–101(a) for that matter) have not been preserved for our determinative review, although we shall exercise our discretion under Rule 8–131(a) and, nonetheless, hold, that, under the circumstances of this case, section 6–105 would not afford petitioner any relief were it to be applicable.

Petitioner then appealed to the Court of Special Appeals. In an unreported opinion, the Court of Special Appeals affirmed the judgment; however, the Court affirmed on different grounds. The Court of Special Appeals held that:

In this case, we agree with appellees that, even if we assume, *arguendo*, that the trial judge erred in holding that a claim had not been filed within six months of Ferguson's death, appellant [petitioner] was not entitled to a judgment

---

11. All references to section 6–105 are to this section.

12. All references to section 7–101 are to this section.

anyway because Elizabeth's estate never proved that the deceased loaned Ferguson money—hence appellant failed to demonstrate prejudicial error.

The Court of Special Appeals went on to state that:

There simply were no facts presented in this sparse record from which it could be inferred legitimately that Ferguson agreed to repay his sister the $36,517 she had advanced on his behalf. From the evidence, several equal possibilities exist, and there is no way of telling which is more likely. There are at least four possibilities: (1) Elizabeth and Ferguson agreed that Elizabeth would loan the money to Ferguson, and Ferguson would repay it; (2) Elizabeth advanced the money without any agreement but with the profound hope that Ferguson would repay her, if and when he was able; (3) Ferguson accepted his sister's charity without comment but secretly hoped to repay her some day; (4) Elizabeth made the payments without any expectation of repayment but, after her brother died, decided to recapture what she had advanced. Under these circumstances, we hold that the trial judge was clearly erroneous in finding that Elizabeth's estate had proved its claim. Because the estate of Elizabeth failed to prove its claim, appellant also failed to show that the Orphans' Court committed prejudicial error when it ruled that no claim had been filed within six months of Ferguson's death.

Petitioner then filed a Petition for Writ of Certiorari to this Court.

## II. Discussion

We hold that, under the circumstances of this case, the limitation on presentation of claim statute bars petitioner from bringing a claim against respondent. As we have indicated, *supra,* only the limitations issue and the sufficiency of the claim were properly presented below, we will, accordingly, address those issues in determining whether Elizabeth's claim is barred by the limitation on presentation of claim statute or by the sufficiency issue.[13] The first is whether the letter sent

---

13. The trial court's holding was based solely on the limitations issue. As *dicta,* it addressed the sufficiency of the claim issue. The Court of

from Elizabeth to Todd is a presentment of a claim within the time provided by statute. The second is whether respondent is estopped from asserting the limitation on presentation of claim statute because of his actions prior to being appointed personal representative. We are first going to examine the nature of filing claims and the duties of a personal representative and if those duties can commence prior to the personal representative being appointed. We will then resolve whether the letter sent from Elizabeth to Todd was the presentment of a claim and whether respondent is estopped from asserting that the claim filed by Elliott violates the limitation on presentation of claim statute because of Todd's actions prior to being appointed personal representative.

## A. Claims

■ In order for a claim to be properly filed against an estate, there are several requirements that it must satisfy. A claim must be filed within the time prescribed by the statute, it must be presented in the statutorily required form, and it must be presented to the statutorily required person or entity, *i.e.*, a personal representative or a Register of Wills, or suit must be filed in respect to the claim.

For a claim against an estate to be valid it must be presented in accordance with the time restrictions of Maryland Code (1974, 2001 Repl.Vol.), section 8–103 of the Estates and Trusts Article.[14] Section 8–103 states, in relevant part, that:

§ 8–103. **Limitation on presentation of claim.**

(a) *General.*—Except as otherwise expressly provided by statute with respect to claims of the United States and the State, all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or

Special Appeals based its decision solely on the sufficiency of the claim issue that had been *dicta* below. Both courts were correct in their holdings-the circuit court on the limitations issue; the Court of Special Appeals on the sufficiency issue.

**14.** All references to section 8–103 are to this section.

unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates:

(1) 6 months after the date of the decedent's death; or

(2) 2 months after the personal representative mails or otherwise delivers to the creditor a copy of a notice in the form required by § 7–103 of this article or other written notice, notifying the creditor that his claim will be barred unless he presents the claim within 2 months from the mailing or other delivery of the notice.

Ferguson died on July 5, 1998. The claim presented by Elliott, as executor of the estate of Elizabeth, was filed on April 7, 1999, over nine months after Ferguson was deceased. The claim presented by Elliott was clearly in violation of section 8–103(a)(1) and was properly barred by the Orphans' Court unless respondent is estopped from asserting that the claim violates section 8–103 or unless the provisions of section 6–105 are applicable under the circumstances of the case at bar.[15]

The manner and form for presentment of a claim is governed by Maryland Rule 6–413 and Maryland Code (1974, 2001 Repl.Vol.), section 8–104 of the Estates and Trusts Article.[16] Maryland Rule 6–413, in relevant part, states:

**Rule 6–413. Claim against estate—Procedure.**

(a) **Presentation of claim.** A claimant may make a claim against the estate, within the time allowed for presenting claims, (1) by serving it on the personal representative, (2) by filing it with the register and serving a copy on the personal representative, or (3) by filing suit. If the claim is filed prior to the appointment of the personal

---

**15.** We note that, as stated, *supra,* the Orphans' Court found that, although it was close, petitioner had proven his claim. The Court of Special Appeals held that the Orphans' Court was clearly erroneous in finding that petitioner had proven his claim.

**16.** All references to section 8–104 are to this section.

representative, the claimant may file the claim with the register in the county in which the decedent was domiciled or in any county in which the decedent resided on the date of the decedent's death or in which real property or a leasehold interest in real property of the decedent is located.

(b) **Content of claim.** A claim against the decedent's estate shall indicate (1) the basis of the claim, (2) the name and address of the claimant, (3) the amount claimed, (4) if the claim is not yet due, the date when it will become due, (5) if the claim is contingent, the nature of the contingency, and (6) if the claim is secured, a description of the security. Unless the claim is made by filing suit, it shall be verified.

Section 8–104 states, in relevant part, that:

### § 8–104. Manner of presentation of claim; form.

(a) *Presentation of claims.*—Claims against an estate of a decedent may be presented as provided in this section.

(b) *Delivery to the personal representative.*—The claimant may deliver or mail to the personal representative a verified written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed. If the claim is not yet due, the date when it will become due shall be stated. If the claim is contingent, the nature of the contingency shall be stated. If the claim is secured, the security shall be described. The failure of the claimant to comply with the provisions of this section or with the reasonable requests of the personal representative for additional information may be a basis for disallowance of a claim in the discretion of the court.

(c) *Filing with register.*—The claimant may file a verified written statement of the claim, substantially in the form contained in this subsection. If the claim is filed prior to the appointment of the personal representative, the claimant may file his claim with the register in the county in which the decedent was domiciled or in any county in which he resided on the date of his death or in which real property or a leasehold interest in real property of the decedent is

located. If the claim is filed after the appointment of the personal representative, the claimant shall file his claim with the register of the county in which probate proceedings are being conducted and shall deliver or mail a copy of the statement to the personal representative.

Petitioner contends that the letter sent by Elizabeth to Todd was the presentment of a claim to a personal representative. Petitioner contends that the letter was in substantial compliance with the requirements of section 8–104 and Maryland Rule 6–413. The Orphans' Court determined that the letter could not have been a claim since Todd had not been appointed co-personal representative of Ferguson's estate when he received the letter. Therefore, the Orphans' Court held that the claim, in violation of section 8–104(b) and Rule 6–413(a), was not properly presented to a personal representative.

The question is whether section 8–104 and Rule 6–413 would allow a claim to be presented to a person who was not a personal representative but who was eventually appointed a personal representative. Section 8–104 and Maryland Rule 6–413 allow for claims to be presented to the personal representative, to the register with a copy sent to the personal representative, or to the register prior to the appointment of a personal representative. The section clearly lays out at least the preferred method for presenting a claim prior to the appointment of a personal representative. At the time that Elizabeth sent the letter to Todd, he had not been appointed the co-personal representative for Ferguson's estate, nor was he named as such in the will. Petitioner contends that even though Todd had not been named the co-personal representative of Ferguson's estate, he eventually became the co-personal representative. Therefore, although Elizabeth may not have presented the claim to the personal representative, she did present the claim to the person who would become a co-personal representative, so a co-personal representative had knowledge of the claim.

Petitioner, for the first time on appeal, looks to Maryland Code (1974, 2001 Repl.Vol.), section 7–101 of the Estates and Trusts Article to demonstrate that Todd had a duty toward

Elizabeth to act upon her letter that was presented before his appointment, as a claim after his appointment. Section 7–101, in relevant part, states:

### § 7–101. Duties of personal representative generally.

(a) *Fiduciary responsibility.*—A personal representative is a fiduciary. He is under a general duty to settle and distribute the estate of the decedent in accordance with the terms of the will and the estates of decedents law as expeditiously and with as little sacrifice of value as is reasonable under the circumstances. He shall use the authority conferred upon him by the estates of decedents law, by the terms of the will, by orders in proceedings to which he is party, and by the equitable principles generally applicable to fiduciaries, fairly considering the interests of all interested persons and creditors.

Petitioner contends, for the first time on appeal, that section 7–101 establishes that a personal representative has a fiduciary responsibility, including a responsibility to fairly consider the interests of all creditors. Petitioner believes that this obligation entrusted Todd with the obligation to consider all interests, not just the interests of the estate. Petitioner contends that once Todd had knowledge of the claim, even if it occurred prior to him being appointed personal representative, he had a fiduciary responsibility to consider and act upon the claim. According to petitioner, Todd's failure to act would result in his being estopped from asserting the "statute of limitations." [17]

In order for respondent to be estopped, if he can be, from asserting the provisions of the limitation on presentation of claim statute or for Elizabeth's letter that she sent to Todd to qualify as a claim, petitioner, had it properly preserved the issue, must show that Todd's actions, prior to being appointed co-personal representative, bind Ferguson's estate. Petitioner, again for the first time on appeal, looks to Maryland Code (1974, 2001 Repl.Vol.), section 6–105 of the Estates and Trusts

---

**17.** No estoppel arguments were made before the Orphans' Court.

Article to show that actions by a person prior to being appointed personal representative can bind the estate. Section 6–105 states:

**§ 6–105. Time of accrual of duties and powers; ratification.**

(a) *When letters are issued.*—The duties and powers of a personal representative commence upon the issuance of his letters, but when done in good faith, his acts occurring prior to appointment have the same effect as those occurring after.

(b) *Acts of others.*—A personal representative may ratify and accept acts done on behalf of the estate by others if the acts would have been proper for a personal representative.

We have held that "[t]he acts of a person prior to appointment as personal representative may act to bind an estate, and the personal representative may ratify actions taken prior to appointment." *Chapman v. Kamara,* 356 Md. 426, 441, 739 A.2d 387, 395 (1999). Petitioner contends that under section 6–105, Todd's actions prior to being appointed co-personal representative either bind respondent to recognize Elizabeth's letter as a claim or estop respondent from asserting the provisions of the limitation of presentation of claim statute under section 8–103.

### B. Presentment of a Claim

Petitioner contends that under section 6–105, Todd had the authority to bind Ferguson's estate prior to his appointment and that he did bind the estate through his actions when he requested from Elizabeth any bills of Ferguson's that she incurred while Ferguson was in the hospital. Petitioner also contends that when Elizabeth then sent a letter to Todd with a list of checks, that letter was a valid presentment of a claim. We hold that the letter was not a valid presentment of a claim because the claim was not in substantial compliance with section 8–104(b) and Rule 6–413(a), by not being presented to a personal representative or to the Register of Wills.

This Court has never had the opportunity to directly address the questions now presented. The Court of Special Appeals, however, has held that claimants have to be in substantial compliance with sections 8–103 and 8–104. In *Lampton v. LaHood,* 94 Md.App. 461, 617 A.2d 1142 (1993),[18] the Court of Special Appeals stated that:

The sole authority cited by Lampton in support of her argument is *Lowery v. Hairston, supra* [73 Md.App. 189, 533 A.2d 922 (1987) ]. There, plaintiffs filed an action against the personal representative of an estate seeking specific performance of a real estate purchase option. The circuit court dismissed the action, finding that the option constituted a "claim" under § 8–103(a) and that the plaintiffs had failed to file the claim in a timely fashion. We reversed, holding that three *letters* from the plaintiffs to the personal representative, which were sent and received by him prior to the statutory deadline for claims, and in which were stated the names and addresses of the claimants, the terms of the option, and their intent and ability to exercise it, constituted substantial and timely compliance with the statute. This holding is, as we noted then, entirely consistent with the "use of the word 'may' throughout § 8–104," indicating that the forms of presentment are "permissive and not mandatory in nature." 73 Md.App. at 197 n. 2, 533 A.2d 922. The view that substantial, rather than strict compliance, is all that is necessary, has also been adopted by other courts interpreting similar statutes. *See e.g., Peterson v. Marston,* 362 N.W.2d 309 (Minn.1985); *Quinn v. Quinn,* 772 P.2d 979, 981 (Utah App.1989); *Strong Bros. Enterprises, Inc. v. Estate of Strong,* 666 P.2d 1109 (Colo.App.1983). *See also Matter of Estate of Phillips,* 532 A.2d 654 (D.C.App. 1987).

To permit substantial compliance with these kinds of statutory requirements, does not, however, sanction the

---

**18.** The actions at issue in *Lampton* and *Lowery* all occurred after LaHood and Hairston had been formally appointed personal representatives of the estates at issue.

elimination of such requirements altogether. There must still be compliance with the statute, indeed there must be "substantial compliance" with it. Lampton does not cite any case, from any jurisdiction, in which a court has held that in the absence of some writing—whether it be a formal claim, or a letter, or a memorandum, or a lawsuit—a claimant has been held to have substantially complied with a claims notice statute like § 8–104. In *Lowery* and all of the out-of-state cases cited above, the claimant timely notified the personal representative of the claim by a *writing* of some kind.

*Id.* at 469–70, 617 A.2d at 1146 (emphasis added); *see Chamberlin v. Carter,* 835 F.Supp. 869, 874 (D.Md.1993); *Lowery v. Hairston,* 73 Md.App. 189, 197, 533 A.2d 922, 927 (1987).

█ Considering only section 8–104 and Rule 6–413,[19] we hold that a claimant is not in substantial compliance with section 8–104 and Rule 6–413 when the claimant presents a claim to a person who has not been appointed the personal representative. When Elizabeth sent her letter dated July 24, 1998 to Todd, Ferguson's will was not yet filed with the Register of Wills. It was not filed until September 9, 1998, nearly seven weeks later and after Elizabeth was dead. At the time that the will was filed, the will named Donna and Benjamin Baird as personal representatives. At the time that Elizabeth sent her letter to Todd, not only was he not the personal representative, but he was not even named in the will as the personal representative. It was not until September that Todd was appointed co-personal representative, after the personal representatives named in the will renounced their appointment.[20]

---

**19.** We also find that petitioner would have to be in substantial compliance with Rule 6–413(a).

**20.** In *Lynde v. Rienks,* 844 P.2d 1295 (Colo.App.1992), a claimant was contending that he sent a claim to a person who was designated as the personal representative in the will of the decedent. The court held that "a claim against a decedent's estate, if not filed with the clerk of the

We note that the language of section 8–104 and Rule 6–413 would indicate that a claim cannot be presented to a person who has not been appointed a personal representative. Section 8–104 and Rule 6–413 both make allowances for the proper procedure a claimant is to follow if a personal representative has not been appointed. If a personal representative has not been appointed, then a claim should be filed with the Register of Wills, or a suit should be filed. As stated numerous times, *supra,* in the case *sub judice,* not only was Todd not yet appointed a co-personal representative when he received the letter from Elizabeth, but he was not even named in the will as the personal representative.

Under the facts of the case *sub judice,* we cannot find that Elizabeth was in substantial compliance with section 8–104(b) and Rule 6–413(a) when she sent a letter to Todd approximately two months before he was appointed personal representative and at a time when he was not named in the will as a personal representative. The record gives no indication of Todd's stating to Elizabeth that he was or was not going to be the personal representative. There is also no proof that Todd thought, or had any indication that, he was going to be the personal representative when he asked Elizabeth to send him any bills she incurred while his father was in the hospital. He may well have been considering personally paying such bills. His inaction after receiving the letter from Elizabeth further confirms that he was not acting as a personal representative. We can find no evidence in the record that would indicate that Elizabeth ever thought that Todd was the personal representative and that was her reason for sending him the letter. Furthermore, we cannot find any evidence in the record where, prior to his appointment, Todd conducted himself or held himself out to be the personal representative. Based on these facts, we cannot find that Elizabeth was in substantial compliance with section 8–104. She did not deliver her letter to the personal representative because a personal representa-

court, must be mailed or delivered to a personal representative who has already been formally appointed by order of the court." *Id.* at 1299.

tive. had not been appointed at the time. If Elizabeth wanted to deliver her claim then, under section 8–104, she should have properly filed it with the Register of Wills or filed suit on her claim.

## C. Estoppel

Petitioner contends that even though Todd requested the bills from Elizabeth and received the letter from her prior to his appointment as a co-personal representative, he had the subsequent authority under section 6–105 to bind the estate and it was this subsequent authority that should now estop him from asserting the "statute of limitations." Elliott alleges on appeal, but never so alleged below, that he relied on Todd's representation that he wanted the bills that Elizabeth had incurred while Ferguson was in the hospital and the letter sent from Elizabeth to Todd as a claim to his, *i.e.*, the estate's, detriment, since the claim has been barred by the "statute of limitations." Petitioner states that his detrimental reliance on Todd's actions as a soon to be co-personal representative should estop respondent from asserting that petitioner violated the "statute of limitations" when it filed a claim over nine months after Ferguson died. There, however, is little evidence of reliance in the first instance. Elizabeth died before Ferguson's estate was opened. Thus, there is no evidence that, during the complete six-month claim period, she relied on Todd's inquiry and silence subsequent to his receipt of her letter. She was dead for all but one month of the six-month period. Accordingly, she personally was, for most of the entire period, incapable of reliance. Moreover, there is no evidence in the record of the case at bar that Elizabeth's executor was even aware of Todd's inquiry and Elizabeth's letter in the six-month period following the death of Ferguson. Furthermore, there is no evidence that petitioner even knew of, or ever relied on section 6–105's provisions. It was not raised in the Orphans' Court-being raised for the first time on appeal. There is no evidence that Elliott was even aware of the provisions of the limitation on presentation of claim statute. The evidence is completely to the contrary, as we

discuss, *infra.* There is simply insufficient evidence of reliance.

This Court has had the opportunity to examine equitable estoppel before. In *Knill v. Knill,* 306 Md. 527, 510 A.2d 546 (1986), we stated that:

The definition of equitable estoppel that has been consistently applied in Maryland is as follows:

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

3 J. Pomeroy, *Equity Jurisprudence,* § 804 (5th ed.1941), *quoted in Leonard v. Sav–A–Stop Services,* 289 Md. 204, 211, 424 A.2d 336, 339 (1981).

Thus, equitable estoppel requires that the party claiming the benefit of the estoppel must have been misled to his injury and changed his position for the worse, having believed and relied on the representations of the party sought to be estopped. *Dahl v. Brunswick Corp.,* 277 Md. 471, 487, 356 A.2d 221, 230–31 (1976); *Savonis v. Burke,* 241 Md. 316, 319, 216 A.2d 521, 523 (1966). Although wrongful or unconscionable conduct is generally an element of estoppel, an estoppel may arise even where there is no intent to mislead, if the actions of one party cause a prejudicial change in the conduct of the other. *Bean v. Steuart Petroleum,* 244 Md. 459, 224 A.2d 295 (1966); *Travelers v. Nationwide,* 244 Md. 401, 224 A.2d 285 (1966); *Alvey v. Alvey,* 220 Md. 571, 155 A.2d 491 (1959). Of course, the party who relies on an estoppel has the burden of proving the facts that create it. *Doub v. Mason,* 2 Md. 380, 406 (1852); *First Nat. Bank v. Mayor and City Council,* 27 F.Supp. 444, 454 (D.Md.1939).

As indicated by the definition set forth above, equitable estoppel is comprised of three basic elements: "voluntary

conduct" or representation, reliance, and detriment. These elements are necessarily related to each other. The voluntary conduct or representation of the party to be estopped must give rise to the estopping party's reliance and, in turn, result in detriment to the estopping party. *See Dahl v. Brunswick Corp., supra; Savonis v. Burke, supra.* Clearly then, equitable estoppel requires that the voluntary conduct or representation constitute the source of the estopping party's detriment.

*Id.* at 534–35, 510 A.2d at 549–50.

In order for respondent to be estopped from asserting that petitioner violated the limitation on presentation of claim statute, petitioner must show that respondent made a representation and that petitioner relied on that representation to his detriment. Petitioner contends that Todd made a representation as a soon to be co-personal representative that was detrimentally relied upon by petitioner. Petitioner alleges that if Todd had not asked for any bills from Elizabeth, then she would not have sent him the letter and then petitioner would have filed a valid claim within the six-month claim period. Petitioner's contention fails in two places. First, Todd did not make an affirmative representation that petitioner could have reasonably relied upon for the belief that petitioner did not need to file a claim against Ferguson's estate. Second, petitioner has not shown that it, or Elizabeth, actually relied upon the statement made by Todd, and for that reason delayed filing a claim beyond the statutory period.

The courts of this State have held that in order for a personal representative to be estopped from asserting the limitation on presentation of claim statute, there must be some affirmative act by the personal representative that a party relies upon and that gives a party the reasonable belief that the party does not need to file a claim. In the case *sub judice,* if Elizabeth was relying on anything, it was on Todd's silence after she sent him a letter, because neither she, nor her executor, received any affirmative statement or action from Todd. Additionally, there was absolutely no evidence that Elizabeth was aware of the six-month period for filing of a

claim. Thus, there is not, and cannot be, evidence that she failed to file a claim because she felt that limitations had been waived. There is absolutely no evidence that her personal representative even knew of Todd's statement or Elizabeth's letter within the six-month period after Ferguson's death. Moreover, as stated, *supra*, her personal representative did not even know of the statute's provisions. Elizabeth's estate could not have been induced to fail to file a claim within a statutory period when it did not know about the period.

In *Chandlee v. Shockley*, 219 Md. 493, 150 A.2d 438 (1959), we discussed whether a personal representative could waive or be estopped from asserting the statute of limitations. In *Chandlee*, a claim was filed against the administratrix of the estate of Homer W. Shockley by Clara Chandlee, who had been involved in an automobile accident with Shockley on October 8, 1956 that killed Shockley. Chandlee's claim was dismissed and she filed an amended claim. We stated that the claim made the following allegations:

> [T]hat the appellee [the administratrix of Shockley's estate] qualified as administratrix on October 18, 1956, and that following such qualification "duly authorized representatives and agents of the * * * Administratrix" had "requested and induced" the appellant [Chandlee] not to file suit and assured her "that said claim would be settled and * * * damages paid by * * * deceased's estate without the necessity of filing suit." These statements were alleged to have lulled appellant "into a false sense of security in the belief .that the said Administratrix had waived the benefit of six (6) months limitation period in cases of this type" and "by reason of said statements, representations and inducements, the * * * Administratrix * * * is now estopped from relying on the six (6) months limitation period.["]

*Id.* at 494–95, 150 A.2d at 439. We then looked at the facts that Chandlee relied upon that led her not to file suit within the then six-month limitation on presentation of claim period. We stated:

> Particulars filed in response to demand set forth various verbal communications between the appellant's attorneys ·

and persons alleged to have been acting in behalf of the administratrix over a period from October 15, 1956, to May 15, 1957, particularly a Mr. Petrick, who, when told by appellant's counsel that he wanted to be sure, if settlement failed, that Petrick would not "knock me out of Court by pleading limitations", replied: "There is no reason for you to say that. * * * I think this is the type of a claim which can and should be settled out of court. * * * We will not take any more advantage of you than I know you will take of us. My company does not work that way." Mr. Petrick also said on a later occasion that nothing would be gained by filing suit, that more time was necessary to learn the extent of the damages, and that he would not take advantage of a delay. "My company does not make a practice of taking advantage of legal technicalities in order to keep from paying legitimate claims. Insofar as I know, we are not arguing here over liability. We are discussing damages and you can take my word for it that there is no reason for you to file suit. I repeat, don't file suit, because there is no reason for it." The appellant was hospitalized on several occasions and not finally released until after the six-month period had expired. Between May 15 and June 21, repeated efforts to reach Mr. Petrick failed, and suit was then filed. *Id.* at 495, 150 A.2d at 439.

Chandlee alleged that even though she failed to file her claim in the time prescribed by statute, she should not be barred because Shockley's estate, or the estate's representatives, induced the delay so that Shockley's estate should be estopped from relying on the "statute of limitations." We held that an administratrix may be estopped, based on her actions, from asserting a violation of the "statute of limitations." We stated that:

> We hold that an executor or administrator against whom a claim is asserted by virtue of Code, 1957, Art. 93, Sec. 112,[21] may waive or be estopped to rely on the time limit of

---

21. Maryland Code (1957), Article 93, section 112, stated that a claim could be brought against an executor or administrator of an estate

the statute. This construction of the law does no violence to its purpose to permit personal representatives to make prompt settlement of estates without liability for claims not timely filed or asserted since the executor or administrator necessarily must know of *and induce the late suit thereon* within the statutory period.

We think the allegations of the amended declaration as particularized sufficiently alleged facts, from which, if proven, waiver or estoppel could be found.

*Id.* at 502–03, 150 A.2d at 443 (internal citations omitted) (emphasis added). We held that affirmative actions of a personal representative can estop the personal representative from asserting that a claimant has violated the "statute of limitations." As is absolutely clear, the evidence of reliance, conspicuously absent in the case *sub judice,* was overwhelming in *Chandlee.*[22]

The Court of Special Appeals addressed the same issue in *Ohio Casualty Insurance Company v. Hallowell,* 94 Md.App.

---

within six months from the date of qualification of the executor or administrator. This statute was recodified and is now in Maryland Code (1974, 2001 Repl.Vol.), section 8–103 of the Estates and Trusts Article.

**22.** In *Chandlee,* we unanimously acknowledged that the time bar on the filing of claims was a substantive limitation on the filing of such a claim—a condition precedent. Nonetheless, we held in a three to two decision that the then time bar was waived under the extraordinary circumstances of that case. As stated above, in *Chandlee,* the personal representative's agent, after the appointment of the personal representative and within the time for filing of claims, affirmatively assured the creditor that if he did not file a claim, the personal representative would not avail herself of the limitations provision to disallow the claim. We did agree unanimously that the limitation on presentation of claim was a substantive part of the statute—that it was a condition precedent.

Because our decision in the case at bar is that respondent is not estopped from asserting that Elliott violated the limitation on presentation of claim period, we do not need to address the condition precedent ramifications of the statute. Either way, we would affirm. The ramifications of the condition precedent aspect of this statute will await another day and another case. *Chandlee* was an unusual case.

444, 617 A.2d 1134 (1993)[23] and *Lampton v. LaHood,* 94 Md.App. 461, 617 A.2d 1142 (1993). In *Ohio Casualty,* John Auguste, who was married to Alma Auguste, was the president and majority owner of an electrical contracting company. Ohio Casualty issued two payment bonds to the electrical contracting company. Ohio Casualty received John and Alma Auguste's individual personal agreements to indemnify Ohio Casualty for the bonds. On January 28, 1990, Alma Auguste died. The electrical contracting company experienced difficulties in paying the bonded obligations. John Auguste, individually and as personal representative of the estate of Alma Auguste, then negotiated a forbearance agreement with Ohio Casualty on February 28, 1990.[24] The forbearance agreement included a scheduling of payments to suppliers in return for their promise to forbear making immediate demand for payment. The forbearance agreement also affirmatively stated that John Auguste and the estate of Alma Auguste agreed to an extension of the applicable "statute of limitations" until three years after each date a payment was made by Ohio Casualty. It was clear that the purpose of the agreement related to the settlement of an estate claim, and, further, that his purpose was to forestall a claim against the estate by specifically waiving the "statute of limitations."

On June 13, 1991, Ohio Casualty filed a claim against the estate of Alma Auguste based on Alma Auguste's obligation under the indemnification agreement. Under the "statute of limitations," a claim against an estate had to be filed within nine months after the decedent's death.[25] The Orphans' Court denied the claim because it was filed after the then nine-month

---

**23.** *Hallowell* also involved claims that acts of a person prior to his appointment as a personal representative could bind the estate. As in *Chandlee,* however, the evidence of intention, and, more importantly, reliance, was much more pervasive than in the present case.

**24.** John Auguste was not appointed personal representative until twenty to thirty days after he executed the forbearance agreement.

**25.** This nine-month period was stated in Maryland Code (1974, 1991 Repl.Vol.), section 8–103 of the Estates and Trusts Article. This period was reduced to six months in October of 1992.

limitation on presentation of claim period. The Court of Special Appeals held that the personal representative had the authority, by affirmative action, to waive the "statute of limitations." The Court stated:

> Although the nine-month statute of limitations (now six months) applies even in the absence of notice, the cases hold that it can be waived if there is sufficient evidence of inducement, estoppel, fraud or waiver. In the case at bar, the parties entered into an express agreement extending the limitation period. In doing so, the period was waived.
>
> We hold that personal representatives may waive the application of the statute of limitation.

*Ohio Casualty*, 94 Md.App. at 459, 617 A.2d at 1141.

In *Lampton*, Thomas LaHood was appointed the personal representative of the estate of Terri Hackett. Ms. Hackett and her husband (from whom she was separated) each owned an undivided one-half interest in a condominium in South Carolina. Ms. Hackett and her husband had executed a note, secured by a mortgage on the condominium in South Carolina, to Patricia Lampton. Mr. LaHood, after he was appointed personal representative, called Frank DuRant, who was the attorney who handled the condominium transaction in South Carolina, to inquire about the value of the condominium and the amount to be paid on the mortgage. Mr. DuRant, who was representing Ms. Lampton, testified that during the conversation Mr. LaHood told him that he did not need to file a claim for Ms. Lampton because Mr. LaHood, the appointed personal representative, was aware of the claim. Mr. DuRant also testified that Ms. Lampton and the Hackett family were not able to reach an agreement on payment of the note. Mr. DuRant stated that he had numerous telephone conversations with members of the Hackett family and their representatives, including Mr. LaHood, about resolving the problem. There were also several letters introduced before the Orphans' Court that evidenced the discussions about the problem between the Hackett family and Ms. Lampton. Mr. LaHood clearly had knowledge that Ms. Lampton held the note and mortgage and that she had a potential claim against the Hackett estate. Mr.

LaHood further acknowledged to a trustee of the decedent's children that the Hackett estate and Mr. Hackett would be responsible for any deficiency on Ms. Lampton's note.

On May 21, 1991, Ms. Lampton filed a claim against the Hackett estate for $90,831.97 plus interest from January 1991. The Hackett estate denied Ms. Lampton's claim on the basis of the limitation on presentation of claim statute and Ms. Lampton then filed a petition to allow the claim in the Orphans' Court for Charles County. The Orphans' Court denied the petition.[26] The Court of Special Appeals held that the affirmative assertions made by Mr. LaHood, as personal representative of the Hackett estate, to Mr. DuRant, that Mr. DuRant did not need to file a claim against the estate because Mr. LaHood was aware of the claim, estopped Mr. LaHood from asserting that Ms. Lampton had violated the "statute of limitations" in filing her claim against the Hackett estate.

Although not relating to actions prior to the appointment of a personal representative, this Court has had occasion, other than *Chandlee*, to examine when a personal representative, in different circumstances, should be estopped from asserting that a party has violated the limitation on presentation of claim statute. *See Grimberg v. Marth*, 338 Md. 546, 555, 659 A.2d 1287, 1291 (1995) ("Even if an action is commenced beyond this six-month limitations period, however, a personal representative may be estopped to assert the statute of limitations as a defense if the delay in commencing an action was induced by the personal representative."); *Nyitrai v.Bonis*, 266 Md. 295, 300, 292 A.2d 642, 644–45 (1972) ("Settlement negotiations alone, however, do not raise an estoppel ... especially where there is no showing, and there was none here, that the appellee or his counsel held out any inducements not to file suit or indicated that limitations would not be pleaded."); *Jordan v. Morgan*, 252 Md. 122, 132, 249 A.2d 124,

---

**26.** Ms. Lampton appealed to the Court of Special Appeals. She presented five issues on appeal. One issue was whether "[t]he personal representative is estopped from relying on time limitations contained in the statute because of appellant's justifiable reliance on the personal representative's assurances and actions."

129–30 (1969) ("There is no showing that Mr. Clagett held out any inducement not to file suit. There is no indication that Mr. Clagett indicated in any way that limitations would not be pleaded. There is no indication that any legal defense would be waived. There is no showing of any unconscionable, inequitable or fraudulent act of commission or omission upon which Jordan relied and has been misled to his injury."); *Bertonazzi v. Hillman*, 241 Md. 361, 365, 216 A.2d 723, 725 (1966) ("We see no support whatever in the record for a finding of waiver or estoppel. Neither in the plea of estoppel nor in a long letter to Judge Byrnes is there mention of or reference to any express promise or agreement of Mrs. Hillman or her lawyer to waive the statute."); *Cornett v. Sandbower*, 235 Md. 339, 342, 201 A.2d 678, 680 (1964) ("In the instant case, however, there is no indication that the delay in filing suit was induced by any action of the appellee. Nor was there any showing of fraud. Instead, the only conclusion that can be drawn from the evidence is that the delay was due to a lack of diligence on the part of the appellant.").

The courts of our sister states have also held that in order for a personal representative to be estopped from asserting similar limitations defenses, the personal representative must have made an affirmative act that the claimant relied upon or the personal representative must have perpetuated a fraud that the claimant relied upon. *See American & Foreign Ins. Co. v. Dimson*, 645 So.2d 45, 48 (Fla.App. 4th Dist.1994) ("Plaintiff also asserts estoppel as a basis for excusing its late filing of the claim. However, for estoppel to be applied, there must be some *affirmative* deception shown." (emphasis added)); *Estate of Howarth v. Howarth*, 108 Mich.App. 8, 10–11, 310 N.W.2d 255, 256 (1981) (in proceeding on mother's claim against son's estate, trial court did not err by applying doctrine of equitable estoppel to avoid statute of limitations on claim where trial court found that mother had been induced by son to postpone suit to collect on promissory note on reasonably well-grounded belief that she would be paid if she did not sue); *Missouri Highway & Transp. Comm'n v. Myers*, 785 S.W.2d 70, 73 (Mo.1990) ("The Commission next argues the

personal representative is estopped from asserting the statutes' bar as a defense, but this contention is without merit because the executor took no action which misled the Commission or made any statement within the time for filing claims, nor thereafter, upon which the Commission mistakenly relied to its detriment."); *Boyer v. Sparboe*, 263 Mont. 289, 294, 867 P.2d 1116, 1119–20 (1994) ("We wish to emphasize that the rationale behind the statutory requirement that a creditor's claim be filed is sound and should not be easily dispensed with. However, under very limited circumstances, as in this case, where an estate has actual notice of a claim and makes representations to the claimant which lead the claimant to believe that it is not necessary to protect his claim by filing a creditor's claim ... the estate will not be able to use the failure to file a creditor's claim as a defense to bar the claim."); *Estate of Frandson v. Schott*, 383 N.W.2d 807, 809 (N.D.1986) ("An essential element of equitable estoppel is a representation which may consist of words, acts, or silence, believed and relied upon by the party claiming the benefit of the estoppel which induced him to act or refrain from acting, to his prejudice. Although equitable estoppel has been recognized as an exception to compliance with non-claim statutes, there must, at a minimum, be some form of *affirmative* deception involved before the doctrine may be invoked." (emphasis added) (internal citation omitted)); *Children's Medical Ctr. v. Ward*, 87 Ohio App.3d 504, 508, 622 N.E.2d 692, 695 (1993) ("Silence by an executor, in response to a submitted bill, does not save an improperly presented claim from being time-barred.").

 We hold that for a personal representative to be estopped from barring a claim under the limitation on presentation of claim statute, the personal representative must take some affirmative act or make some affirmative statement that the claimant reasonably relies upon to the claimant's detriment. In the case at bar, Todd was not the personal representative when he inquired about bills that Elizabeth incurred while his father was in the hospital. Todd also was not the personal representative when Elizabeth sent the letter to

Todd with the list of checks. At the time, the will did not even state that Todd was to be appointed one of the co-personal representatives. It was not until approximately two months after Todd received the letter that he was appointed co-personal representative.

There is no evidence in the record, and there was no testimony before the Orphans' Court, that Todd ever made an affirmative or fraudulent act that Elizabeth, had she lived, and especially petitioner, could have reasonably relied upon to not file a claim and that would now estop respondent from asserting that a claim violates section 8–103. In fact, there was no evidence that the executor of Elizabeth's estate knew that Todd had inquired about bills Elizabeth had incurred or that he knew that Elizabeth had sent Todd a letter with a list of checks. After Elizabeth's death, which occurred before the opening of Ferguson's estate, there is no evidence in the record that her estate ever contacted respondent, or Todd individually, to ascertain the status of any alleged claim.[27] There is no evidence in the record that Todd made any affirmative act toward Elizabeth or petitioner, once he received the letter, or made any statement to either of them that would have given petitioner any reasonable belief that petitioner did not need to file a claim against Ferguson's estate.

### III. Conclusion

We hold that the Orphans' Court for Montgomery County correctly barred petitioner's claim because it was in violation of section 8–103. Elizabeth did not present a valid claim to Todd and respondent was not estopped from asserting that

---

**27.** If petitioner was that concerned about his claim and respondent's inaction, petitioner could have petitioned the court for a determination of the validity of their claim under Rule 6–413(f)(1). Rule 6–413(f) states, in relevant part, that:

(f) **Claimant's petition.** (1) No action taken. If no action has been taken by the personal representative disallowing the claim in whole or in part, the claimant may petition the court for determination of the validity of the claim.

section 8–103 applies to the claim filed by Elliott as executor of Elizabeth's estate.

When a claimant wants to present a claim under section 8–104 and Rule 6–413, the claim needs to be presented to a person who has already been appointed as a personal representative. If a personal representative has not been appointed, the statute provides that a claimant, desiring to protect a claim, may file it with the Register of Wills or they may file suit on the claim. Absent clear *affirmative* action, on the part of a person who is ultimately named as a personal representative, a claim must be presented to an appointed personal representative or the Register of Wills, or a suit on the claim may be filed.

In order for a personal representative to be estopped from asserting the limitation on presentation of claim statute, the personal representative must have made a clear affirmative representation that a claimant detrimentally relied on. More specifically, the personal representative must make an affirmative representation that makes the claimant reasonably believe that the claimant does not need to file a claim within the relevant time period. A personal representative normally will not be estopped by his silence from asserting the statute—section 8–103. There must be a substantial detrimental affirmative representation that the claimant need not file a claim with the estate, made by one who then has the present power, or who later has the power, to bind the estate. Additionally, it must be established that the claimant relied on the representation to the claimant's detriment, and that the reliance was reasonable.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**