620 A.2d 340

**Woodrow W. VEST**

v.

**GIANT FOOD STORES, INC. et al.**

**No. 68, Sept. Term, 1992.**

Court of Appeals of Maryland.

March 9, 1993.

462

Luiz R.S. Simmons, on brief, Silver Spring, for petitioner.

Christopher R. Costabile, on brief, Fairfax, VA, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

The issue before us is the interpretation of Maryland Code (1957, 1985 Repl.Vol.), Article 101, § 40(c),[1] which

---

**1.** Hereinafter all statutory references are to Maryland Code (1957, 1985 Repl.Vol.), Article 101, unless otherwise indicated. We also note that in 1991 the General Assembly recodified Article 101, § 40, as Md.Code (1991), Labor & Employment Article, § 9–736. *See* Chapter 8 of the Acts of 1991, § 2. Section 9–736 of the Labor & Employment Article provides:

"(b) *Continuing powers and jurisdiction; modification.*—(1) The Commission has continuing powers and jurisdiction over each claim under this title.

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

(3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the last compensation payment.

(c) *Estoppel; fraud.*—(1) If it is established that a party failed to file an application for modification of an award because of fraud or facts and circumstances amounting to an estoppel, the party shall apply for modification of an award within 1 year after:

(i) the date of discovery of the fraud; or

(ii) the date when the facts and circumstances amounting to an estoppel ceased to operate."

According to the Revisor's Note this provision is "new language derived without substantive change from former Art. 101, § 40(b) through (d)." We apply former § 40 since this case arose prior to the

restricts the Workers' Compensation Commission's ability to reopen prior awards of compensation to five years following the last payment of compensation.

## I.

On November 3, 1980, Woodrow Wilson Vest injured his lower back while working at the Landover, Maryland, warehouse of Giant Food Stores, Inc. (Giant). On December 30, 1980, Vest filed an "Employee's Claim" with the Workers' Compensation Commission (Commission), alleging that he was injured in the course of his employment with Giant. Neither Giant, Giant's insurer, nor Vest requested a hearing, and on January 30, 1981, the Commission issued an "Award of Compensation" (the Award) without a hearing based on the information set forth in the claim form, the employer's injury report, and a surgeon's report contained in its files.

The Award of Compensation provided that "[a]fter due consideration of the above entitled case, it is determined that the claimant sustained an accidental injury arising out of and in the course of employment" and that the Commission had "concluded to pass an Order based on the evidence in the record...." The Commission required Giant and its insurer to pay Vest "$241.00 per week, payable weekly, during the continuance of [Vest's] temporary total disability...." The Award also stated that it was "subject to further determination by the Commission as to whether the claimant has sustained any permanent disability."

Vest received temporary total disability benefits from November 5, 1980 to December 21, 1980; from December 28, 1980 to January 3, 1981; and from February 1, 1982 to February 2, 1982. He received temporary partial disability benefits intermittently from December 20, 1980 to June 12,

recodification, but note that this decision is applicable to the Act in its present form as well.

1981 and from January 28, 1982 to March 6, 1982. Vest received his last payment on April 5, 1982.

In the summer of 1987, Vest underwent two operations on his lower back which he alleged were related to the November 1980 injury. Giant's insurer paid the medical expenses for both operations.[2] In 1988, Vest's doctor determined that Vest had a forty-five percent permanent partial disability of his lower back following the operations. Vest presented a claim to Giant's insurance carrier seeking compensation for his permanent partial disability. Giant's insurer denied the claim on the basis that the statutory five-year limitations period had expired.

On April 5, 1989, exactly seven years from the date of his last payment of compensation, Vest petitioned the Commission to reopen his claim to redetermine the nature and extent of his disability. The Commission conducted a hearing and denied Vest's request on the grounds that the limitations period had expired. Vest appealed the Commission's decision to the Circuit Court for Prince George's County. The circuit court granted Giant's motion for summary judgment, also on the basis of limitations. Vest then appealed to the Court of Special Appeals which affirmed the circuit court. *Vest v. Giant Food, Inc.,* 91 Md.App. 570, 605 A.2d 627 (1992). We granted certiorari to determine when the § 40(c) limitations period commenced in this case.

## II.

The outcome of this case hinges upon the interpretation of the Workers' Compensation Act (the Act). Specifically, we must interpret and apply the Act's reopening provision

---

**2.** Section 67(5) defines "compensation" under the Act as "the money allowance payable to an employee or to his dependents as provided for in this article...." We have held that "compensation" does not include the payment of medical expenses and, therefore, payment of medical benefits does not toll or extend the five-year limitations period. *Holy Cross Hosp. v. Nichols,* 290 Md. 149, 161–63, 428 A.2d 447, 453–54 (1981).

found in Maryland Code (1957, 1985 Repl.Vol.), Article 101, § 40(c). Section 40(c) provides:

> *"Modifications or changes.*—The powers and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified; provided, however, that no modification or change of any award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within five years next following the last payment of compensation."

Vest raises four arguments as to why the limitations provision of § 40(c) should not foreclose the Commission's ability to reopen his case. First, Vest argues that the January 30, 1981 Award of Compensation was neither an "award of compensation" nor a "finding" within the meaning of § 40(c), thus never triggering the limitations period. Second, even assuming that the January 1981 Award was an "award of compensation," Vest contends that § 40(c) only applies to *final* awards of compensation, and the January 1981 Award was not designated as final. Third, he urges that the Commission's January 1981 Award expressly retained jurisdiction over the case for a future determination of permanent partial disability, thus tolling any applicable limitations period. Finally, Vest asserts that, because his prior Award was for a temporary disability only, § 40(c) did not preclude the reopening of the Award with respect to permanent disability.

■■■ When interpreting a statute's provisions, our goal is to ascertain and effectuate the intention of the legislature. *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 484–85 (1991). The primary source from which to determine this intent is the language of the statute itself. *Revis v. Maryland Auto. Ins. Fund,* 322 Md. 683, 686, 589 A.2d 483, 484 (1991). In determining the meaning of the statutory provisions, the statute must be examined as a whole and the interrelationship or connection among all its provisions are

considered. *Howard County Ass'n for Retarded Citizens v. Walls*, 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980). Furthermore, when interpreting the Workers' Compensation Act, if there is any ambiguity in the statute's language we generally construe the Act "as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Id.* With these principles of statutory interpretation in mind, we address each of Vest's arguments and affirm the decision of the Court of Special Appeals.

### III.

■ Vest's initial arguments center on the method by which the Commission issued the January 1981 Award. In general, Vest contends that the limitations period does not apply where the Commission orders compensation, without the benefit of a hearing, based solely on the evidence in the record before it. In advancing his theory, Vest argues that such awards fail to qualify as either "awards of compensation" or "findings" in the context of § 40(c).

### A.

Under § 40(c), modifications of an "award of compensation" may occur only within five years of the last payment of compensation under such an award. Vest reasons that if the January 1981 Award was not an "award of compensation," then the limitations period would not apply. We must, therefore, determine whether the Commission's January 1981 Award was an "award of compensation" under § 40(c).

The Act defines "compensation" as "the money allowance payable to an employee or to his dependents *as provided for in this article....*" § 67(5) (emphasis added). This definition of compensation is broad and encompasses most forms of payment to employees provided under the statute, although it excludes the payment of medical expenses. *Holy Cross Hosp. v. Nichols*, 290 Md. 149, 161–63, 428 A.2d

447, 453–54 (1981). Since §§ 36(2) and 36(6) of the Act provide for the payment of a percentage of an employee's weekly salary due to temporary total disability and temporary partial disability, the payments Vest received for these injuries (excluding reimbursement of medical expenses) were "compensation" under the Act.

Although the Act defines the term "compensation," it does not expressly define the term "award." Section 40(a) does, however, define the process the Commission follows in determining whether to grant or deny "awards" under the Act. Section 40(a) provides:

> *"Hearing and award.*—The Commission shall make or cause to be made such investigation of any claim as it deems necessary, and upon application of either party, shall order a hearing. Within thirty days after a claim for compensation is submitted under this section, or such hearing concluded *the Commission shall make or deny an award, determining such claim for compensation,* and file same in the office of the Commission." (Emphasis added).

Section 40(a) thus establishes two methods by which the Commission makes or denies awards: by hearing after application of either party or, in the absence of a hearing, upon the evidence contained in the record before it. *Cf. Oxford Cabinet Co. v. Parks,* 179 Md. 680, 684–85, 22 A.2d 481, 483 (1941) (describing the relationship between the two methods).

Vest attempts to distinguish between the two methods. He contends that the payment of compensation without a hearing cannot be regarded as an "award of compensation" under § 40(c). He asserts that such orders do "no more than determine the compensability of the claim" and do not constitute "a decision regarding the validity of the claim." Vest cites no Maryland authority for this interpretation, and we find it to be without merit. Neither § 40(a) nor § 40(c) distinguish between the two methods of granting awards for purposes of applying the limitations period, and we decline Vest's invitation to create a distinction. Thus, we

find that the January 1981 Award was an "award of compensation" under § 40(c).

## B.

Vest attempts to create another issue from the fact that the Commission made the January 1981 Award without a hearing. He notes that the limitations period in § 40(c) applies only to "modifications or changes with respect to *former findings* or orders with respect thereto...." (Emphasis added). Vest asserts that where an award is made without a hearing, it is "automatic," and therefore is not based on "findings" as intended under § 40(c). He suggests that such decisions are simply reflexive and not a result of administrative deliberations. Thus, he concludes that the limitations period only commences after a hearing before a Commission. We disagree, because the plain language of the statute rebuts Vest's argument that such awards are "automatic." Section 40(a) states that the Commission "shall make *or deny* an award...." (Emphasis added). Indeed, the Commission *must* deny a claim of compensation if the record before it indicates the claim is unfounded.

This Court addressed a similar issue in *Oxford Cabinet Co. v. Parks*, 179 Md. 680, 22 A.2d 481 (1941). In *Parks*, we considered whether the Commission's award of compensation without a hearing constituted a "decision" for purposes of an appeal under the Act. At the time, the Act provided a right of appeal to a party "aggrieved by a decision of the Commission." The employer in that case received notice of the claim but failed to respond before the consideration date, thus waiving its right to a hearing. The Commission issued an award of compensation to the employee's widow. The employer sought an appeal before the Baltimore City Court which dismissed the appeal. In finding that the Commission's award constituted a decision for purposes of appeal we stated:

"In the instant case no hearing was requested. Appellant was notified by the Commission that if no request for a

hearing was made that the Commission would pass upon the evidence then in hand. The Commission had before it a statement of the death, that it was the result of injury sustained while in the employ of appellant, the amount of the weekly earnings, the name and relationship of the person dependent on the deceased for support. There was also filed proof of death from the physician and undertaker. It therefore appears that the Commission had sufficient and complete 'evidence then in hand' before it to pass upon the claim, and 'after due consideration of that evidence at hand,' made the award on the facts before it and the employer feeling aggrieved by the decision of the Commission on that evidence noted the appeal."

*Id.* at 685, 22 A.2d at 483.

We find *Parks* instructive in the case before us. As in *Parks*, the Commission here had before it "sufficient and complete" evidence in the record to find the necessary elements of Vest's claims. The record contained evidence that Vest was injured and that the injury was incurred within the scope of employment; the Commission also had before it medical evidence of the nature and extent of the injury. Here, too, the Commission made an award of compensation based on the "evidence then in hand." This deliberative process, while short of a full adversarial hearing, nonetheless constituted "findings" for purposes of § 40(c).

### C.

In sum, Vest's arguments read § 40(c) out of its statutory context. Sections 40(a) and 40(c) are not part of the same statutory section by happenstance. Section 40(a) establishes two methods by which the Commission may decide to award compensation; § 40(c) provides a process by which the Commission may later modify those awards. Section 40 must be read as a whole and with due regard to the interrelationship of its component parts. *See Walls,* 288 Md. at 530, 418 A.2d at 1213 ("statutes must be examined

as a whole and the interrelationship or connection among all of its provisions considered."). The very structure of § 40 indicates that the legislature intended both methods of issuing awards be treated equally, with § 40(c) limiting the Commission's ability to reopen awards regardless of which method was used to determine the initial award. To read § 40 otherwise would indefinitely leave open the most common type of award of compensation, awards without hearings. As Professor Larson has noted:

"[A]ny attempt to reopen a case based on an injury ten or fifteen years old must necessarily encounter awkward problems of proof, because of the long delay and the difficulty of determining the relationship between some ancient injury and a present aggravated disability. Another argument is that the insurance carriers would never know what kind of future liabilities they might incur, and would have difficulty in computing appropriate reserves." (Footnotes omitted).

2 A. Larson, *Workmen's Compensation* § 81.10, at 15–94 to 15–95 (Desk ed. 1976). A total absence of any limitations period for the many cases decided on the record would only further compound such risks and potentially overload the Commission's docket. For all of the foregoing reasons, we reject Vest's argument that awards of compensation issued without a hearing under § 40(a) are not subject to the five-year limitations period of § 40(c).

## IV.

Vest next argues that, even assuming that the Commission's January 1981 Award was an "award of compensation," the limitations period in § 40(c) did not apply because his award was not a *"final* award of compensation." He finds this requirement in a predecessor of § 40(c) which applied the limitations period only to "final awards of compensation." Vest suggests that the subsequent changes to § 40(c) were merely superficial and that we should continue to apply the finality requirement even though the specific language has since disappeared from

the statute. Our review of the history of § 40(c), however, leads to a different conclusion.

Section 40(c) has a long lineage and, in one form or another, has been a part of the Workers' Compensation Act since its inception in 1914. *See Holy Cross Hosp.*, 290 Md. at 154–55, 428 A.2d at 449–50 (relating evolution of § 40(c)). As the General Assembly originally created the Act, the Commission could freely reopen an award without regard to the passage of time. *Id.* at 154, 428 A.2d at 449; *Ireland v. Shipley*, 165 Md. 90, 96, 166 A. 593, 596 (1933). Chapter 800 of the Acts of 1914, § 53, simply provided that:

> "The powers and jurisdiction of the Commission over each case shall be continuing and it may from time to time make such modifications or change with respect to former findings or orders with respect thereto as in its opinion may be justified."

The Commission retained broad power under the Act to revisit its prior awards until 1931 when the General Assembly amended what had become § 54. In this amendment the Legislature added the language on which Vest relies. Revised § 54 read:

> "The powers and jurisdiction of the Commission over each case shall be continuing and it may from time to time make such modifications or change with respect to former findings or orders with respect thereto as in its opinion may be justified; *provided, however, that no modification or change of any final award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within one year next following the final award of compensation."* (Emphasis added).

Ch. 342 of the Acts of 1931. The effect of this amendment was to limit the rights of claimants to reopen their prior awards to have them conform to changed conditions after a "final award of compensation." *Ireland*, 165 Md. at 97, 166 A. at 596. Had this been the General Assembly's final alteration before recodifying § 54 into § 40(c), Vest's argument that later deletion of reference to a final award was

merely superficial might be more persuasive. The General Assembly, however, did not stop with its 1931 amendment.

In 1935, the General Assembly made another significant alteration to § 54. In Chapter 236 of the Acts of 1935, the General Assembly extended the limitations period for reopening final awards to three years and enacted a limitation period for awards of compensation that the Commission did not designate as final. The amended provision provided:

"The powers and jurisdiction of the Commission over each case shall be continuing and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified; provided, however, that no modification or change of any final award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within *three years* next following the last final award of compensation, but no award shall be considered a final award under this Section unless it shall have been so designated on the award by the Commission. *In cases where no final award shall have been made by the Commission, but an award not designated as a final award shall have been made by the Commission, no additional award or awards of compensation shall be made by the Commission unless application therefor be made to the Commission within three years next following the last payment of compensation under such an award or awards not designated by the Commission as final."* (Emphasis added).

Ch. 236 of the Acts of 1935 (codified as amended at Md. Code (1939), Art. 101, § 66). Thus, the 1935 amendment extended the limitations period to *all* awards of compensation ordered by the Commission, not just awards that the Commission designated as final.

This Court's interpretation and application of the limitations period under the 1931 and 1935 versions of the Act also illustrate the statute's evolution. In *Ireland v. Shipley,* 165 Md. 90, 102–03, 166 A. 593, 596 (1933), the Court

acknowledged that the 1931 version's one-year limitations period barred reopening of a final award after the statutory period had run. Thirty-one years later, in *Vigneri v. Mid City Sales Co.*, 235 Md. 361, 201 A.2d 861 (1964), the Court addressed the limitations period under the 1935 amendments. In *Vigneri*, the claimant had last received a payment of compensation on November 5, 1954 under an award that the parties conceded was not final. On December 28, 1958, he petitioned to reopen his case to reconsider the nature and extent of his disability. This Court applied the three-year limitations provision as amended in 1935 to decide that the request to reopen should have been denied. *Id.* at 364, 201 A.2d at 862. The award's lack of finality was immaterial to the Court's decision.

In 1957 the General Assembly recodified the Act into the form at issue here. Ch. 814 of the Acts of 1957 (codified as amended at Md.Code (1957), Art. 101, § 40(c)).[3] The recodified § 40(c) makes no reference to "final" or "non-final" awards; it simply condenses the previously separate provisions for final and non-final awards into a single clause. The evolution of § 40(c), as evidenced by the statute's plain language and its history, makes clear that the award's finality is immaterial. Therefore, we hold that the five year limitations period under § 40(c) begins to run after the last payment under an award of compensation whether or not the award is designated as final.

## V.

■ Vest suggests still another reason why the limitations period should be tolled. He argues that " '[i]f, either by the form of the Commission's order or by express statutory provision, continuing jurisdiction has been reserved over an award, it does not achieve finality and is therefore not subject to the limitations on reopening applicable to final awards....' " (quoting 2 A. Larson, *Work-*

---

3. The General Assembly extended the limitations period from three to five years in 1969. Ch. 116 of the Acts of 1969.

*men's Compensation* § 81.50, at 15–109 to 15–110 (Desk ed. 1976)). Because the Award of Compensation included a statement that "this award is subject to further determination by this Commission as to whether the Claimant has sustained any permanent disability," Vest contends that the Commission reserved continuing jurisdiction and thus tolled the limitations period. We disagree.

The Maryland Workers' Compensation Act's reopening provision is broad. *See Subsequent Injury Fund v. Baker,* 40 Md.App. 339, 345, 392 A.2d 94, 98 (1978) (characterizing Maryland's reopening provisions as "one of the broadest"). It provides that "[t]he powers and jurisdiction of the Commission over each case shall be continuing, and it may ... make such modifications or changes with respect to former findings or orders ... as in its opinion may be justified[.]" § 40(c). The Commission's power to reopen awards, however, is expressly limited with respect to the time during which it may exercise that power. Section 40(c) grants the Commission continuing jurisdiction enabling it to reopen prior awards, but it also limits the exercise of that jurisdiction to a five-year period. After five years from the last payment of compensation, § 40(c) divests the Commission of any authority to exercise its otherwise broad reopening powers. *See Public Serv. Comm'n v. Kolb's Bakery & Dairy,* 176 Md. 191, 195, 4 A.2d 130, 132 (1939) (where a legislative grant of authority provides an agency with limited jurisdiction, that grant will be strictly construed).

Vest contends that the Commission has the ability to toll the operation of the limitations period by including a written reservation of jurisdiction in its Award of Compensation, and did so in this case. We cannot adopt this interpretation. First, it is evident that the Commission did not construe its 1981 Award as reserving continuing jurisdiction. This appeal was brought because the Commission itself found that the limitations period barred reopening of Vest's Award. In any event, such a reservation, even if intended by the Commission, is wholly inconsistent with § 40(c). The Commission cannot bypass the statutory re-

striction on its authority. An agency "cannot override the plain meaning of the statute or extend its provisions beyond the clear import of the language employed." *St. Dep't. of A. & T. v. Greyhound Computer Co.,* 271 Md. 575, 589, 320 A.2d 40, 47 (1974); *see also Supervisor v. Chase Associates,* 306 Md. 568, 579, 510 A.2d 568, 573 (1986); *Macke Co. v. Comptroller,* 302 Md. 18, 22–23, 485 A.2d 254, 257 (1984). It is clear from the history of § 40(c) that, by enacting a limitations provision, the General Assembly restricted the Commission's ability to exercise its authority to reopen prior awards. The Commission cannot bypass this restriction merely by *sua sponte* inserting a clause in an award of compensation.

## VI.

 Vest's final argument focuses on the classification of the January 1981 Award as an award for temporary disability, rather than for permanent disability. Vest argues that the limitations period of § 40(c) does not apply to a request to reopen a case where the Commission rendered no findings "with respect to the issue of the nature and extent of permanent partial disability." Vest's interpretation of § 40(c), however, is again inconsistent with the language of the Act and with applicable precedent.

 The plain language of § 40(c) provides that "no modifications or change of *any* award of compensation" may be made after the limitations period has expired. (Emphasis added). No distinction is made between awards for temporary or permanent disability. In fact, the term "compensation" by definition encompasses payments for *both* temporary and permanent disability. § 36(1)–(3) & (6). Accordingly, all modifications to prior awards, regardless of whether these awards are temporary or permanent, must be sought within five years of the last payment of compensation under the initial award.

Prior decisions refute Vest's contention that whether the disability is temporary or permanent affects the limitations

period. In *Ireland v. Shipley,* decided when the limitations period applied only to "final" awards, the claimant contended that because his award was described as temporary it was not a "final award" subject to the limitations period. He sought to reopen the award, claiming his disability had become permanent. We rejected his argument, noting:

"It is true that in his claim [the claimant] described the disability as temporary, and that in the physician's report filed with the claim [the disability] is described as temporary, but that did not make the award any less final. What the commission considered under the claim was the extent and duration of the disability due to the injury, and it undertook by its award to finally deal with that question in the light of the evidence before it. The fact that that evidence was erroneous did not affect the quality of the award as to finality, but merely gave the claimant a privilege to ask that the case be reopened. But the award did finally decide the case which the claimant brought before the commission, which was, what compensation he was entitled to receive for the disability caused by the injury."

*Ireland,* 165 Md. at 103, 166 A. at 596.

*Vigneri v. Mid City Sales Co.* also supports our holding that it is the date of the last payment of compensation, not the nature of the disability, that determines when the limitations period commences. In *Vigneri,* the claimant received an award for temporary total disability. Three years after the limitations period had run, he sought to reopen the award to redetermine "the nature and extent of his disability." We found that the limitations period of § 40(c) barred reopening of the award, regardless of whether it was for a temporary or permanent disability. We simply looked to the date that the claimant last received compensation to determine when the limitations period commenced. *Vigneri,* 235 Md. at 364, 201 A.2d at 862.

In sum, we conclude that the limitations period in Vest's case began to run from the date of the last payment of compensation, April 5, 1982, without regard to whether the

Commission classified the underlying disability as temporary or permanent. In instances where temporary disabilities later become permanent, claimants are free to seek modification of their prior awards to reflect true conditions. They must do so, however, within five years from the last payment of compensation under the prior award, as the statute provides.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY APPELLANTS.