833 A.2d 527

MONA ELECTRIC COMPANY, et al.,

v.

Wade O. SHELTON.

No. 131, Sept. Term, 2002.

Court of Appeals of Maryland.

Oct. 9, 2003.

Janis R. Harvey (Rudoph L. Rose, Anthony D'Allesandro and Jacqueline Ridgell of Semmes, Bowen & Semmes, P.C., on brief), Baltimore, for petitioners.

Robert Earl Wilson (Wilson & Parlett, on brief), of Upper Marlboro, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

WILNER, Judge.

The principal issue before us in this workers' compensation case is the construction and applicability of Maryland Code, § 9–736(b)(3) of the Labor and Employment Article (LE), which precludes the Workers' Compensation Commission from "modify[ing] an award unless the modification is applied for within 5 years after the last compensation payment." Petitioner, Mona Electric Company, paid its employee, Wade Shelton, benefits for temporary total disability in the absence of any award from the Commission. More than five years after the last payment, Shelton sought benefits for permanent partial disability. The Commission found the statute applicable and denied his claim. The Circuit Court for Calvert County and, on appeal, the Court of Special Appeals found the statute inapplicable. We agree with the courts and shall affirm the judgment.

## BACKGROUND

On August 30, 1991, Shelton was injured in an automobile accident while in the course of his employment with Mona. On April 14, 1992—more than seven months later—he filed a claim for workers' compensation benefits.[1] On April 29, the Commission sent notice of the claim to Mona. On May 8, Mona contested the claim by filing "Contesting Issues" with the Commission, the issues, as articulated, being (1) whether Shelton sustained an accidental injury arising out of and in the course of employment, and (2) "such other issues that may

---

1. With certain exceptions, LE § 9–709 requires that a claim based on accidental personal injury be filed within 60 days after the date of the injury and provides that, unless excused by the Commission, a failure to file the claim within that period bars the claim. No issue has been raised in this appeal regarding the delayed filing.

arise." Upon that filing, the Commission scheduled a hearing for September 17, 1992.

On September 4, Mona notified the Commission that it had withdrawn the contesting issues and asked the Commission to postpone the scheduled hearing. It informed the Commission that it had elected to accept the claim as compensable and that it had begun paying temporary disability benefits, apparently as of the date of the accident. Those payments continued, without the benefit of any award by the Commission, until September 16, 1994, when Mona terminated them because, in Mona's opinion, Shelton had reached maximum medical improvement. The last check sent to Shelton for his temporary disability was dated October 3, 1994.

In February, 1998, Shelton sought an emergency hearing before the Commission in connection with a request for certain medical benefits. A hearing was scheduled for April 6, but was continued, subject to being reset on request, when both sides informed the Commission that they had resolved the pending issue. In July, 1998, Shelton settled a third-party claim that he had filed, presumably against the driver who caused the accident, and sent Mona's insurer $15,856 in full satisfaction of its "workers' compensation lien."

In November, 1999, Shelton filed the claim that precipitated this appeal. He sought permanent partial disability to his body as a whole. Mona and, upon its being impleaded, the Subsequent Injury Fund raised a number of defenses, including "limitations." At the request of Mona and the Fund, the Commission considered only the limitations issue, on the theory that, if limitations barred the claim, there was no need to consider any of the other issues. The limitations issue arose from LE § 9–736(b)(3) which, at the time, provided that, with exceptions not relevant here, "the Commission may not modify an award unless the modification is applied for within 5 years after the last compensation payment." [2] At a hearing held in

---

2. In 2002, § 9–736(b)(3) was amended to commence the limitations period from the latest of the date of the accident, the date of disable-

September, 2000, Mona urged that, as the last payment of compensation to Shelton was in October, 1994, the request for modification, filed in November, 1999, was outside the limitations period and was therefore barred. Shelton pointed out that there had never been an award, arguing, as a result, that the statute was not applicable, or at least did not bar his claim for permanent disability benefits. On November 2, 2000, the Commission entered an order declaring that the claim was barred.

Shelton filed a petition for judicial review, in response to which Mona and the Subsequent Injury Fund moved for summary judgment on the ground of "limitations"—*i.e.*, that LE § 9–736(b)(3) barred the claim. Shelton filed a cross-motion for summary judgment, arguing that § 9–736(b)(3) was inapplicable because he was not seeking to modify an award— no award had ever been entered by the Commission and, thus, there was no award to be modified. Although Shelton regarded the statutory language, requiring that there be an award for the limitations provision to apply, as clear and unambiguous, he urged that, to the extent there was any ambiguity as to whether the statute applied, that ambiguity should be resolved in his favor, given that, as remedial legislation, the Workers' Compensation Act was to be applied liberally in favor of claimants. After a hearing, the court found merit in Shelton's argument and, in a subsequent order, granted his motion, reversed the Commission's order, and remanded the case to the Commission for further proceedings.

The Court of Special Appeals affirmed. *Mona Electrical v. Shelton*, 148 Md.App. 1, 810 A.2d 1022 (2002). Following the lead of the Supreme Court in its interpretation of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 922, in *Intercounty Construction Corporation v. Walter*, 422 U.S. 1, 95 S.Ct. 2016, 44 L.Ed.2d 643 (1975), the

---

ment, or the last compensation payment. The 2002 amendment, which appears to have been a response to the decision of the Court of Special Appeals in *Zeitler–Reese v. Giant Food,* 137 Md.App. 593, 769 A.2d 269 (2001), is not applicable to this case

intermediate appellate court concluded that § 9–736(b)(3) applied only when there was an award that was sought to be modified, a circumstance lacking in this case. To equate the voluntary payment of compensation with an award entered by the Commission, the court held, would "provide an avenue by which employers could avoid Commission oversight" and thus "defeat the purposes of the Act." *Mona Electrical,* 148 Md. App. at 10, 810 A.2d at 1027.

We granted *certiorari* to determine whether the two lower courts correctly construed § 9–736(b)(3). Mona contends that the term "award," as used in the statute, is ambiguous and that it should be construed as including payments made by an employer, in response to a claim, upon the employer's determination that the claim is valid. Such payments, it avers, constitute an "award" by the employer and should be treated the same as payments made pursuant to an award by the Commission. Any other construction, it complains, would be grossly inequitable and could lead to a flood of unnecessary litigation. Mona also contends that Shelton is equitably estopped from asserting the bar of § 9–736(b)(3) because he willingly accepted the temporary disability benefits, as if there had been a Commission award.

## DISCUSSION

### Is The Claim Barred By § 9-736(b)(3)?

The issue presented by Mona is purely one of statutory construction: does the limitation in § 9–736(b)(3) on the authority of the Commission to modify an "award" apply when the "compensation" previously paid by the employer was not paid pursuant to a Commission "award"?

In construing statutes our mission, as we have said many times, is to "ascertain and implement, to the extent possible, the legislative intent." *Toler v. MVA,* 373 Md. 214, 220, 817 A.2d 229, 233 (2003); *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160, 165 (2002). As we pointed out in those cases, we look first to the words of the statute, "on the tacit theory that the Legislature is presumed to have meant what it

·said and said what it meant." *Id.* We added, however, that "'if the true legislative intent cannot readily be determined from the statutory language alone,' we may look to other indicia of that intent, including the structure of the statute, how it relates to other laws, its legislative history, its general purpose, and the 'relative rationality and legal effect of various competing constructions.'" *Toler, supra,* at 220, 817 A.2d at 233 (quoting from *Witte, supra,* 369 Md. at 525, 801 A.2d at 165). One aspect of examining those indicia, we said, "is the presumption, which itself is a rule of construction, that the Legislature 'intends its enactments 'to operate together as a consistent and harmonious body of law.'" *Toler,* at 220, 817 A.2d at 233 (quoting from *State v. Ghajari,* 346 Md. 101, 115, 695 A.2d 143, 149 (1997) (quoting, in turn, from *State v. Harris,* 327 Md. 32, 39, 607 A.2d 552, 555 (1992))).

Shelton looks at the word "award" in § 9–736(b)(3) as essentially the alpha and omega of our quest. If the Legislature meant the statute to apply to situations in which compensation was paid without the benefit of an award, it would have said so. The fact is, he says, that there is no award to be modified, and, consequently, the limitation on the Commission's authority does not apply. We agree with that analysis and conclusion, both as a matter of technical statutory construction and as indicative of overall legislative intent.

■ Section 9–736 needs to be read in both an internally coherent way and harmoniously with other relevant statutes. The clear intent of the statute is to give the Commission broad continuing jurisdiction over claims, in order to respond to the improvement or worsening of a claimant's disability over time. Subsection (a) provides that, if aggravation, diminution, or termination of disability occurs or is discovered after the rate of compensation is set, the Commission may (1) readjust for future application the rate of compensation, or (2) if appropriate, terminate the payments. Subsection (b) contains three provisions. The first—subsection (b)(1)—gives the Commission "continuing powers and jurisdiction over each claim under this title." The second—subsection (b)(2)—provides that, sub-

ject to subsection (b)(3), the Commission may "modify any *finding or order* as the Commission considers justified." (Emphasis added). Subsection (b)(3) adds that the Commission may not modify "an award" unless the modification is applied for within five years after "the last compensation payment."

The limitation in subsection (b)(3) is only on the modification of an "award." The ability to modify any other "finding" or "order" made by the Commission, not constituting an "award," is not dependent on when the last payment of compensation was made. By using different terms in the same section of the same statute, the Legislature is presumed to have intended that the condition of subsection (b)(3) on the Commission's exercise of the broad power of revision vested in it by subsections (a), (b)(1), and (b)(2) itself have a limited meaning, that it, indeed, be restricted to the modification of an "award." *See Toler v. MVA, supra,* 373 Md. at 223, 817 A.2d at 235 ("It is a common rule of statutory construction that, when a legislature uses different words, especially in the same section or in a part of the statute that deals with the same subject, it usually intends different things.").

The problem, of course, is that the word "award," though used frequently in the Workers' Compensation Act, is not a defined term, and Mona complains about the unfairness and the potential pragmatic ramifications of not treating its payments as though they had been made pursuant to an award. In the end, the answer to Mona's complaint does lie in the Legislature's use of the word "award" in § 9–736(b)(3), but the significance of that term and its necessary construction as a *Commission* award, not a voluntary payment by an employer, becomes particularly apparent when that section is read in harmony with the broader statutory procedure governing the determination of claims, as implemented by the Commission.

The statutory procedures and requirements relating to claims are set forth in LE, title 9, subtitle 7 (§§ 9–701 through 9–750). Sections 9–704 through 9–708 impose certain requirements leading up to the filing of a claim—the duty of an injured employee to notify the employer of an accidental

personal injury and the duty of the employer to notify the Commission when the injury causes death or more than three days of disability. More relevant here are §§ 9–709 through 9–733, which govern the filing of a claim and the post-claim procedure, including the payment of compensation. Section 9–709 provides that, if a covered employee suffers an accidental personal injury, the employee shall file a claim application form with the Commission within 60 days after the injury. Section 9–713 requires the employer, within 21 days after the filing of a claim, either to begin paying temporary disability benefits or to file with the Commission "any issue to contest the claim." If the employer fails to do one or the other, the Commission may assess a fine against the employer.[3] Section 9–713(f) provides that, subject to § 9–714, payment by an employer "before an award" does not waive the employer's right to contest the claim.

Section 9–714 deals with the processing of a claim by the Commission, and it is, for our purposes, one of the more

---

**3.** There is some ambiguity in § 9–713. As noted, subsection (a) requires that the employer either commence payments or file contesting issues within 21 days after the claim is filed. Subsection (b) provides that, if the employer, without good cause, fails to do one or the other within 21 days, the Commission may assess a fine against the employer up to 20% "of the amount of the payment." Subsection (c) provides that, if the employer fails to begin payments or file contesting issues within 21 days, it must do so within 30 days, and subsection (d) authorizes the Commission to assess a fine up to 40% "of the amount of the payment" if the employer, without good cause, fails to comply with that obligation. It is not clear from these various provisions whether the employer really must begin making payments or file contesting issues within 21 days, or whether it has 30 days. The penalty provisions would suggest that the obligation is to do one or the other within 21 days, in that there is the prospect of a 20% penalty if that is not done, but, as subsection (a) is expressly made subject to subsection (c), an argument can be made that subsection (c) is the operative obligation. It is also not entirely clear what amount the penalties are based on. They are expressed as 20% or 40% "of the amount of the payment." What payment? The General Assembly may wish to clarify these provisions. *See* Richard P. Gilbert and Robert L. Humphreys, MARYLAND WORKERS' COMPENSATION HANDBOOK, § 14.0, at 295–96 (2d. ed.1993). This case is not affected by any of these ambiguities, as Mona filed contesting issues within 30 days after the claim was filed (and within 21 days after notice of the claim).

important provisions. Subsection (a) provides that, when the Commission receives a claim, it "(1) may investigate the claim; and (2) on application of any party to the claim, shall order a hearing." Subsection (b) requires the Commission to "make or deny an award" within 30 days "(i) after the claim is filed; or (ii) if a hearing is held, after the hearing is concluded." The decision must be recorded in the principal office of the Commission.

Section 9–722 deals with the settlement of claims. Subsection (a) provides that, after a claim has been filed and subject to the approval of the Commission, a claimant may "enter into an agreement [with an employer] for the final compromise and settlement of any current or future claim under this title . . . ." The agreement must contain the terms and conditions the Commission considers proper, and it may not take effect unless approved by the Commission. *See* § 9–722(b) and (c). Finally, with respect to these initial procedures, § 9–727 provides that an employer "shall begin paying compensation to the covered employee within 15 days after the later of the date: (1) an *award* is made; or (2) payment of an *award* is due." (Emphasis added).

Sections 9–713 and 9–722 recognize the essential realities that not every claim is contested and that many of those that are initially contested are resolved either by the employer abandoning the contest or by settlement, without the need for any actual adjudication by the Commission. In some cases, the employer will either not contest the claim at all or, if it initially does challenge the claim by filing contested issues, it will, as Mona did here, withdraw those issues before a hearing.

Whether or not the employer contests the claim, the regime clearly intended by the Legislature is that, except for *commencing* payments within the 21 or 30–day period provided for in § 9–713, compensation is to be paid only upon the filing of a claim and the entry of an award. All of the sections point to that conclusion, but it is most evident from (1) the Commission's regulation that prohibits an employer from paying any compensation pursuant to the Workers' Compensation Act for death or disability of an employee prior to the filing of a claim

(COMAR 14.09.01.09), (2) the requirement of § 9–714 that, upon the filing of a claim, the Commission make or deny an award in every case—within 30 days after the claim is filed if there is no contest, or, when there *is* a contest, within 30 days after a hearing on the claim is concluded, (3) the requirement of § 9–722 that settlements be submitted to the Commission for its approval, and (4) the requirement of § 9–727 that the employer begin paying compensation within 15 days after an *award* is made or payment of an *award* is due.

To construe payments made voluntarily by an employer as an "award," or even the equivalent of an award, as Mona urges, would be completely inconsistent with that legislative mandate and would necessarily erode the Commission's oversight authority. Upon being apprised of an accidental personal injury suffered by an employee in the course of employment, the employer could make a private arrangement with the employee, which may or may not provide the legally required benefits, with no Commission supervision, and later claim the benefit of § 9–736(b)(3). In *Hanley v. Mulleneaux,* 192 Md. 592, 597, 65 A.2d 325, 327 (1949), we made clear that such unsupervised arrangements were impermissible:

> "One purpose of the enactment of the Workmen's Compensation Act was to relieve the State and the taxpayers from the necessity of caring for those injured in extra-hazardous work ... and the achievement of this purpose, as well as the proper care of those so injured, made it necessary to prevent the parties from making their own settlements without supervision by an agency of the State."

*See also Joy Co. v. Isaac,* 333 Md. 628, 634, 636 A.2d 1016, 1019 (1994) ("The Legislature bestowed upon the Commission the exclusive administrative and supervisory authority over the Act.").

The actual practice in the uncontested cases is for the Commission to enter, as a matter of course, a "stipulated" or "statistical" award. If no contesting issues are filed within the time allowed by § 9–713, the Commission will enter the award following the deadline date. If contesting issues are filed but later withdrawn prior to a hearing, the award will be entered

upon notice that the issues have been withdrawn. This is a routine entry, based on the lack of any dispute or contest to the claim; the Commission has the claim form (and any attachments to it) and can determine for itself whether it establishes the prerequisites for an award. If the claim is contested but, pursuant to § 9–722, the parties later settle it and the Commission approves the settlement, an award will be entered in conformance with the settlement.

This practice is certainly consistent with the statutory framework, although it is not directly articulated either in the statutes or in the Commission's formally adopted regulations. It is a matter of long-standing common knowledge, however, and has been commented on and given effect in earlier cases. *See U.S.F. & G. v. Taylor*, 136 Md. 545, 110 A. 883 (1920); *Oxford Cabinet Co. v. Parks*, 179 Md. 680, 22 A.2d 481 (1941); *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 620 A.2d 340 (1993). We noted in *Vest* that the law "establishes two methods by which the Commission makes or denies awards: by hearing after application of either party or, in the absence of a hearing, upon the evidence contained in the record before it," and that an award entered in the absence of a request for hearing has the same validity and effect as one made after a hearing. *Vest*, 329 Md. at 468, 620 A.2d at 343.

The device of the "statistical" award, entered as of course when the claim proceeds uncontested, is described in some detail by Gilbert and Humphreys in the 1993 edition of their MARYLAND WORKERS' COMPENSATION HANDBOOK:

"If issues have not been filed, the Commission will automatically pass an initial award of compensation. The award shall describe the date of injury/onset of disease, the average weekly wage, and order the payment of benefits, based upon the information in the claim form. The authors use the term 'automatically' in the strictest sense of the word. No commissioner ever reviews or orders the passage of an initial award of compensation. These awards are creatures of pure administrative convenience. Once the claim is filed, the administrative clock begins to run. If no contesting issues are in the Commission's possession by the expiration

of thirty days after the date the claim is filed, an initial award is automatically passed. The Commission's ostensible authority for this procedure is found in LE § 9–714 of the Act."

Richard P. Gilbert and Robert L. Humphreys, MARYLAND WORKERS' COMPENSATION HANDBOOK, § 14.0 at 296–97 (2d ed.1993).[4] Mona was obviously aware of the Commission's practice, as it referenced that practice both in its brief and at oral argument.

The procedure of the "statistical award" is, in a sense, the glue that holds some of these statutes together and produces the comprehensive and consistent scheme. The necessary implication from that scheme is that, for purposes of § 9–736(b)(3), the term "compensation," at least when referring to benefits paid for temporary disability, must be read to mean compensation paid pursuant to a Commission award.[5] The

---

**4.** Pressman refers to the practice in the 1977 edition of his work as well. He notes:

"If the employer or insurer, upon receipt of a copy of a claim, is satisfied that the contentions of the claimant are correct, it will permit the 'Consideration Date' to expire, whereupon the Commission will pass one of two types of awards: (1) 'Claim Deferred,' finding that the claimant sustained an accidental injury in his employment but subject to further determination when the nature and extent of the claimant's disability can be determined (this is where the claim does not allege any loss of time from work); (2) 'Award of Compensation,' directing payment of compensation for temporary total disability during the continuance thereof and subject to a credit for days worked and wages paid, and subject to a later determination of average weekly wages where it has not been agreed upon by the parties."

Maurice J. Pressman, WORKMEN'S COMPENSATION IN MARYLAND, § 5–3(4) at 458 (2d ed.1977).

That practice is briefly described as well on the Commission's Internet web site. Among the Brochures and Publications available on that web site (www.wcc.state.md.us) is a Diagram of the Commission's Claim Process. Under the heading "Claims Processing," the diagram states, "Within 30 days of filing the claim, the Workers' Compensation Commission will: 1. Issue an award or 2. Put the case in for hearing because the contesting issues were filed."

**5.** We do not consider here whether other kinds of payments or reimbursements required by the Workers' Compensation Act but not ordi-

pieces then all fit together, and any real or fancied facial ambiguities disappear. The device of the essentially automatic statistical award also makes unlikely the parade of horribles conjured by Mona if we do not rule as it requests—of thousands of claims being paid by employers without the benefit of a Commission award, immune from the five-year limitations provision of § 9–736(b)(3). Claims for compensation under the Workers' Compensation Act are not like claims for damages that may, or do, end up in court. The latter ordinarily can be settled without the need for a judgment, or, indeed, for any court action, and the great majority of them are, in fact, resolved without trial or any judicial action or imprimatur. That is clearly not the case with workers' compensation claims. They *do* require Commission action, in the form of an award.

What apparently happened here is that, for whatever reason, the Commission failed to enter a "statistical award" following notice that Mona had withdrawn its contesting issues, and Mona continued to make payments, in the amounts it believed were due, without the benefit, or authority, of such an award. Either party could, of course, have called the omission to the Commission's attention, whereupon an award no doubt would have been entered. Had such an award been entered, at any time during the existence of Shelton's temporary disability, his present claim clearly would be barred. As Mona was content to have the claim remain in legal limbo, however, and to make payments voluntarily, it now must face the fact that no award was ever entered, and, as a result, no

---

narily made pursuant to an award qualify as a "compensation payment" for purposes of § 9–736(b)(3). That is not before us. We deal here only with payments made for temporary disability. *See Holy Cross Hosp. v. Nichols,* 290 Md. 149, 428 A.2d 447 (1981) ("compensation," as used in the predecessor to § 9–736(b)(3), does not include payments for medical benefits); *Chanticleer Skyline Room, Inc. v. Greer,* 271 Md. 693, 319 A.2d 802 (1974) (attorneys' fees directed by the Commission to be paid to the claimant's attorney from the final weeks of compensation due the claimant constitutes "compensation" for purposes of the limitations provision); *Stevens v. Rite-Aid,* 340 Md. 555, 667 A.2d 642 (1995) (attorneys' fees awarded as sanction for bringing frivolous proceeding do not constitute compensation).

award is sought to be modified. From the Commission's point of view, and from the law's point of view, Shelton's claim is now what it was when first filed—a claim seeking an initial award of benefits.

### Equitable Estoppel

As an alternative basis for seeking reversal of the judgment, Mona argues that, by having willingly accepted the benefits paid by Mona, Shelton is equitably estopped from claiming protection from the effect of § 9–736(b)(3). We have defined equitable estoppel as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." *Leonard v. Sav–A–Stop Services,* 289 Md. 204, 211–12, 424 A.2d 336, 339 (1981) (*quoting* 3 J. POMEROY, EQUITY JURISPRUDENCE § 804 at 189 (5th ed.1941)). *See also Cunninghame v. Cunninghame,* 364 Md. 266, 289, 772 A.2d 1188, 1201–02 (2001).

The doctrine comprises three elements: " 'voluntary conduct' or representation, reliance, and detriment." *Creveling v. Gov't. Employees Ins. Co.,* 376 Md. 72, 828 A.2d 229, 246 (2003) (quoting *Cunninghame,* 364 Md. at 289–90, 772 A.2d at 1202). *See also Dahl v. Brunswick Corp.,* 277 Md. 471, 487, 356 A.2d 221, 230–31 (1976). Mona's position is that Shelton, who knowingly accepted benefits in the absence of an award, should not now be permitted to seek refuge from § 9–736(b)(3) on the basis that no award was issued. Even if there was voluntary conduct on the part of Shelton in accepting the benefits, we fail to see how Mona relied on that conduct to its detriment. Mona also knew that no award had been entered. Indeed, it was its own withdrawal of its contesting issues that should have triggered the statistical or automatic award. If Mona was looking for the protection of an award, for purposes

of § 9–736(b)(3) or for any other purpose, it had the responsibility to see that one was entered. There is no evidence that Shelton said or did anything to preclude, or even discourage, Mona from calling the Commission's attention to the fact that no award had been entered.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.