77 A.3d 1088

**Flora LIPITZ, et. al.**

v.

**William A. HURWITZ.**

**No. 2, Sept. Term, 2013.**

Court of Appeals of Maryland.

Oct. 21, 2013.

274

Shale D. Stiller (Kenneth S. Aneckstein, DLA Piper (US), Baltimore, MD), on brief, for petitioners.

Lee B. Rauch (William C. Sammons, Kristin P. Herber, Tydings & Rosenberg LLP, Baltimore, MD), on brief, for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, JOHN F. McAULIFFE (Retired, Specially Assigned), JJ.

JOHN F. McAULIFFE (Retired, Specially Assigned), J.

This case presents the question of whether a buyer of a property located within a homeowners association, who already owns other lots within the association, is considered a "member of the public" required to receive mandatory disclosures pursuant to the Maryland Homeowners Association Act ("The Act").[1] We are also asked to decide the related question of whether a buyer otherwise entitled to those disclosures may be estopped from relying on the protection of the Act if

---

1. At that time, the Act was found at Maryland Code (1974, 2003 Repl.Vol.), Title 11B of the Real Property Article. It was recodified without alteration in the 2010 Replacement Volume. All statutory references hereinafter are to the Real Property Article, unless otherwise noted.

he declines attempts by the seller to provide the required information, stating that he already has that information.

## I.

William A. Hurwitz (the buyer) entered into a contract on August 6, 2009, with Flora E. and Roger C. Lipitz, as trustees of the revocable property trust of Flora E. and Roger C. Lipitz (the sellers), to purchase a home in the Caves Valley Golf Club Development in Owings Mills, Maryland.[2] The buyer, who was represented in the sale by Krauss Real Property Brokerage, owned two other houses within the Caves Valley Golf Club Development and resided in one of them. The parties agreed to a sale price of approximately $4 million.

The written offer submitted by the buyer included two form addenda, the Maryland Homeowners Association Act Notice to Buyer and the Maryland Homeowners Association Act Disclosures to Buyer and Transmittal of Documents. After negotiations between the parties, they agreed to strike those documents from the contract, apparently because each party believed they were not applicable or could be waived. The bottom of the first page of the contract contains a handwritten note, which states "Subject to Caves Valley Club declaration of covenants, easements, charges and liens." According to the sellers' complaint, they "made attempts to provide [the buyer] with information required by the Act," but "Mr. Hurwitz declined such information stating that he already had those materials." The sellers claim that both parties, although represented by licensed real estate brokers, believed that the Maryland Homeowners Association Act did not apply to the sale.

---

**2.** The facts as presented here are those alleged by Petitioners in their amended complaint. *See Kendall v. Howard County*, 431 Md. 590, 601, 66 A.3d 684 (2013) (quoting *Converge Servs. Group, LLC v. Curran*, 383 Md. 462, 475, 860 A.2d 871 (2004)) ("In reviewing a trial court's grant of a motion to dismiss, 'we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party.' ").

Both parties signed the contract on August 6, 2009, and set the date of settlement for November 2, 2009. Based on this agreement, the sellers no longer sought alternative buyers for the property. The sellers contend that prior to the closing date the buyer was given access to the property to "take measurements and consult with interior designers"; that the sellers also provided Mr. Hurwitz with a demonstration of the "electronic amenities" in the house; and that the buyer "repeatedly conveyed his enthusiasm" about the property, describing the uses to which he might put various rooms in the house and discussing how he might decorate them.

On November 1, 2009, the day before closing, the buyer's agent orally informed the sellers that the buyer would not be closing on the property. No reason was given at that time. The buyer's attorney later contacted the sellers on November 12, 2009, to inform them that, because the buyer had not received the disclosures required under the Maryland Homeowners Association Act, he was canceling the contract. The sellers also received a letter from the buyer, dated November 11, 2009, relaying the same information.

The sellers filed a complaint in the Circuit Court for Baltimore County on June 10, 2010, alleging breach of contract and seeking specific performance. They filed an amended complaint on November 9, 2010.[3] The buyer filed a motion to dismiss the amended complaint on November 19, 2010, and the sellers filed a cross-motion for summary judgment.

The Circuit Court held a hearing on the motions on March 29, 2011. At the hearing, the buyer argued that the sellers were required to provide the disclosures to him under § 11 B–106(b), and that the failure to provide those disclosures rendered the contract unenforceable and gave the buyer the right to cancel. He further argued that under the statute any attempted waiver of the right to receive the disclosures was

3. Petitioners dismissed the claim for specific performance after the property sold on December 7, 2010.

void, thereby making any representations by him that he did not need the documents irrelevant.

During the hearing, the sellers conceded that they had not delivered to the buyer the disclosures specified by the Maryland Homeowners Association Act. The Act requires that notice be given to "a member of the public who intends to occupy or rent the lot for residential purposes." § 11B–106(a). The sellers agreed that the buyer qualified as someone who intended to occupy the lot, but disagreed that he was a "member of the public" under the statute. The sellers maintained that the General Assembly's intent in requiring disclosures was to ensure that people buying into a homeowners association were aware of the relevant applicable rules and policies. Based on this interpretation, the sellers argued that the General Assembly's use of the phrase "member of the public" was designed to differentiate "insiders," i.e., those who already own property in a development and have access to the homeowners association policies, from "outsiders," who are buying into the development for the first time and require protection. Thus, the sellers argued that this buyer, an insider, should not be considered a "member of the public."

As a fallback argument, the sellers contended that even if the buyer is properly considered a member of the public within the meaning of the Act, and therefore ordinarily entitled to the right to cancel the contract, he was in this case precluded from doing so by application of the doctrine of equitable estoppel because he affirmatively refused to receive the required documents and information proffered to him by the sellers.

The Circuit Court ruled orally on the motions, stating

Looking at the statute, I find it is clear and unambiguous. Starting with § 11B–106(a), it says the contract is not enforceable unless the disclosures are given within 20 days of entering the contract, as provided in B.

Section 11 B–108(a) provides that a person who has not received all of the disclosures required is entitled to cancel the contract.

Section 11 B–108(d) provides that, for the right to cancel, which may not be waived, an attempted waiver is void. Section 11 B–103 provides that the provisions of the Act may not be varied by agreement and again says that the rights may not be waived.

So the statute in two different sections says that the rights may not be waived under the Act.

With respect to the meaning of the term "members of the public," I don't find that to be ambiguous at all. I think it means members of the public. Members of the public means members of the public.

And, again, applying the rule of statutory construction, to apply the ordinary and plain meaning of the language, I don't think it is all that complicated.

I find it does include Mr. Hurwitz. He's a member of the public. I think in this context or my interpretation is it refers to a human being, an individual, as opposed to a corporation.

\* \* \*

And with respect to the equitable estoppel argument, I don't find any facts alleged in this case that would give rise to the application of the equitable estoppel argument. I think it boils down to the fact that the [sellers] don't like the statute and if somebody exercises their rights, it doesn't seem fair. That may be, but that's what the statute says.

The Circuit Court granted the buyer's motion to dismiss and denied the sellers' motion for summary judgment. The Court of Special Appeals affirmed the judgment of the Circuit Court. *Lipitz v. Hurwitz,* 207 Md.App. 206, 210, 52 A.3d 94 (2012).

We granted the sellers' petition for writ of certiorari to answer the following questions: [4]

1. Where a consumer protection statute grants to a "member of the public" a right to cancel a contract to purchase

---

**4.** A fourth question presented to the Court of Special Appeals, whether the buyer violated an implied duty of good faith and fair dealing by canceling the contract, was not raised in the petition.

real property in a homeowners association development if certain information is not furnished to the purchaser, does the purchaser qualify as a "member of the public" if he has continuously lived in the development for nine years and already possesses all the requisite information?

2. Should a court seek to avoid conclusions regarding statutory construction which are illogical or inconsistent with common sense, particularly where the court acknowledges its result is "harsh"?

3. Where a statute grants a purchaser of realty a right of cancellation if he does not receive certain information, does the doctrine of equitable estoppel bar the purchaser from exercising that right if the purchaser not only possessed all the information but also affirmatively rejected the seller's offers to furnish him any information he requests?

For reasons we shall explain further, we hold that the buyer was a "member of the public" for purposes of the statute, but conclude that the Circuit Court erred by granting his motion to dismiss because the sellers have presented a justiciable issue of equitable estoppel.

## II.

The Maryland Homeowners Association Act applies to the sales of properties located within a homeowners association in the state. *See* § 11B–102. There are three sections that require sellers to make certain disclosures to buyers. *See* §§ 11 B–105, 11B–106, 11B–107. Of particular relevance here is § 11B–106, which governs the resale of a lot within a development. In pertinent part, subsections (a) and (b) of that section provide as follows:

(a) *Contract.*—A contract for the resale of a lot within a development, or for the initial sale of a lot within a development containing 12 or fewer lots, to a member of the public who intends to occupy or rent the lot for residential purposes, is not enforceable by the vendor unless:

(1) The purchaser is given, on or before entering into the contract for the sale of such lot, or within 20 calendar days

of entering into the contract, the disclosures set forth in subsection (b) of this section;

(2) The purchaser is given any changes in mandatory fees and payments exceeding 10 percent of the amount previously stated to exist and any other substantial and material amendment to the disclosures after they become known to the vendor;

\*    \*    \*

(b) *Information to be supplied by vendor.*—The vendor shall provide the purchaser the following information in writing:

(1) A statement as to whether the lot is located within a development;

(2)(i) The current monthly fees or assessments imposed by the homeowners association upon the lot;

(ii) The total amount of fees, assessments, and other charges imposed by the homeowners association upon the lot during the prior fiscal year of the homeowners association; and

(iii) A statement of whether any of the fees, assessments, or other charges against the lot are delinquent;

(3) The name, address, and telephone number of the management agent of the homeowners association, or other officer or agent authorized by the homeowners association to provide to members of the public, information regarding the homeowners association and the development, or a statement that no agent or officer is presently so authorized by the homeowners association;

(4) A statement as to whether the owner has actual knowledge of:

(i) The existence of any unsatisfied judgments or pending lawsuits against the homeowners association; and

(ii) Any pending claims, covenant violations actions, or notices of default against the lot; and

(5) A copy of:

(i) The articles of incorporation, the declaration, and all recorded covenants and restrictions of the primary development, and of other related developments to the extent reasonably available, to which the purchaser shall become obligated on becoming an owner of the lot, including a statement that these obligations are enforceable against an owner's tenants, if applicable; and

(ii) The bylaws and rules of the primary development, and of other related developments to the extent reasonably available, to which the purchaser shall become obligated on becoming an owner of the lot, including a statement that these obligations are enforceable against an owner and the owner's tenants, if applicable.

Section § 11B–108(a) provides that:

A person who enters into a contract as a purchaser but who has not received all of the disclosures required by § 11B–105, § 11B–106, or § 11B–107 of this title, as applicable, shall, prior to settlement, be entitled to cancel the contract and to the immediate return of deposits made on account of the contract.

■ The parties do not dispute the potential applicability of § 11 B–106 to this particular transaction. Rather, the parties disagree whether Mr. Hurwitz, the intended purchaser of the property, was a "member of the public" under the statute. If he was, then the requirements of § 11 B–106(a) and (b) would have applied to the sale. The term "member of the public" is not defined within the statute.

The sellers argue that this buyer is not a "member of the public" under the statute because, at the time of the sale, he already lived in the development and possessed or had access to the necessary disclosures. They acknowledge that the Maryland Homeowners Association Act is "a typical consumer protection statute" intended to inform buyers of their responsibilities as members of a homeowners association.[5] They

---

5. The sellers point to cases from other courts that have drawn a distinction between "insiders" and "outsiders" in interpreting consum-

claim, however, that this buyer, as someone who already is aware of the disclosures and has the relevant materials, was not intended to be covered by the statute. The buyer disagrees, arguing that the plain language, context, and legislative history of the Act indicate that disclosures must be made to all individuals who purchase a lot for residential purposes. Moreover, the buyer contends that there is nothing in the Act itself that indicates purchasers such as himself should not be covered by its protections. To reach the sellers' interpretation, the buyer argues, "the Court must add language and rewrite the statute to include a new provision not found in the text."

The Court of Special Appeals concluded that nothing in the language of the Act indicated that this buyer should be excluded from its protection. *Lipitz*, 207 Md.App. at 216–17, 52 A.3d 94. "[Petitioners] urge us to make a distinction that simply does not exist in the statute," the Court stated. *Id.* at 217, 52 A.3d 94. The Court concluded that the purpose of the phrase "a member of the public" was to draw a distinction between a developer and an individual who intends to live in the home or rent it. *Id.* at 218, 52 A.3d 94. The Court observed that, in several places throughout the Act, the phrase "who intends to occupy for residential purposes" was added after "a member of the public" to distinguish sales to individuals from sales to developers. *Id.* at 219, 52 A.3d 94.

In determining the meaning of "a member of the public," we apply established rules of statutory construction. "In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision...."

---

er protection statutes. *See, e.g., SEC v. Ralston Purina Co.,* 346 U.S. 119, 124–125, 73 S.Ct. 981, 97 L.Ed. 1494 (1953) (noting that the applicability of the Securities Act to a particular transaction "should turn on whether the particular class of persons affected needs the protection of the Act"). We take note of this and other cases cited by the sellers, but these cases ultimately do not change our conclusion that the statute's plain meaning and legislative history provide sufficient support for our decision.

*Walker v. State,* 432 Md. 587, 615, 69 A.3d 1066 (2013) (quoting *Lowery v. State,* 430 Md. 477, 490, 61 A.3d 794 (2013)). "We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Id.* If "the language is subject to more than one interpretation, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute." *Id.*

We begin by examining the plain meaning of the statute. The relevant language is as follows:

A contract for the resale of a lot within a development, or for the initial sale of a lot within a development containing 12 or fewer lots, to *a member of the public* who intends to occupy or rent the lot for residential purposes, is not enforceable by the vendor unless . . .

§ 11B–106(a) (emphasis added).

The phrase "a member of the public" is generally understood as referring to a broadly defined group of people. For instance, Black's Law Dictionary defines "public" as "[t]he people of a nation or community as a whole." Black's Law Dictionary 1264 (8th ed.2004). A member of the public, then, would simply be a person who is part of a particular nation or community. The buyer similarly cites Webster's for a definition of "member" as "one of the individuals composing a group" and "public" as "of, relating to, or affecting all the people or the whole area of a nation or state." Webster's Ninth New Collegiate Dictionary 740, 952 (1986). Under this interpretation, a meeting that is "open to members of the public" would be generally understood to be open to anyone in a community who wished to attend.

One point is clear from examining the plain language of the statute: a plain reading does not lead one to conclude, as the sellers suggest, that the statute draws a distinction between buyers who are already members of the homeowners association and those who are not. If anything, a plain reading of the

phrase "a member of the public" would lead one to conclude that it is more inclusive, rather than less inclusive. *See Bowen v. City of Annapolis*, 402 Md. 587, 614, 937 A.2d 242 (2007) (concluding that the plain meaning of the phrase "any increase in the pay scale" meant that retired police officers and firefighters were entitled to all of the same salary increases as active duty employees, no matter the source of the increase). A genuine ambiguity exists, however, when one questions whether the phrase "a member of the public" is meant to exclude any person or entity. It is for this reason that we do not rely solely on our understanding of the plain meaning of the statute, but will examine the context of the Act and its legislative history in order to discern the General Assembly's intent in using this particular phrase.

The parties ask us to consider other provisions of Title 11B that they claim shed further light on the matter. The sellers note that § 11B–107(a), which governs the initial sale of a lot that is not intended to be occupied or rented for residential purposes, uses the word "person," rather than "a member of the public." They argue that the use of the word "person" signifies that the provision applies to "everyone," while the use of "a member of the public" signals that some buyers are *not* members of the public. The sellers describe this distinction as the difference between "insiders" and "outsiders." They give the example of a club that is "not open to the public." Public does not mean any person, they contend, because the private club is open to *some* people; thus, the use of "public" in that sense means people who are not members of the club. The sellers analogize this example to that of Mr. Hurwitz, arguing that someone who already lives in a homeowners association is not "a member of the public," but rather a member of the association.

Although we agree that there is a difference between "person" and "a member of the public," it does not necessarily follow that the sellers' interpretation of that difference is the correct one. Equally plausible is the difference that the Court of Special Appeals highlighted between an individual who intends to live in a development and a developer. *Lipitz*, 207

Md.App. at 218, 52 A.3d 94. For this reason, comparing § 11B–106 and § 11B–107 does not lead us to the conclusion advanced by the sellers.

The buyer points to another section of the Act in support of his position, specifically § 11B–111(1). That section, which governs meetings of a homeowners association, states that "all meetings of the homeowners association . . . shall be open to all members of the homeowners association or their agents." § 11B–111(1). The buyer cites this provision as evidence that the General Assembly used more specific language when it intended to, limiting meetings solely to members of a homeowners association, rather than allowing the meetings to be open to members of the public. Although he is correct that the General Assembly could have explicitly excluded members of a homeowners association from the disclosure requirements of the statute, the absence of this language is hardly dispositive, and more likely results from the absence of any necessity to specifically treat the rather rare occurrence of a homeowner in an association buying another home in the same association.

The General Assembly originally enacted the Maryland Homeowners Association Act in 1987.[6] *See* Chapter 321 of the Acts of 1987. The Act had its genesis in the work of the Governor's Commission on Condominiums, Cooperatives, and Homeowners Associations.[7] *See* General Assembly of Mary-

---

**6.** According to documents within the bill file, the Act originally was to be enacted during the 1986 legislative session. During back-and-forth discussions among members of the House and Senate, two additional amendments were added to the bill. The bill, with amendments, passed in the House, but, because of confusion during the last day of session, did not pass in the Senate.

**7.** We reviewed reports prepared by the Governor's Commission but did not discover any extensive discussion of the term "a member of the public." One report stated that the intent of the legislation was to "provide consumers with adequate disclosure about the homeowners association in which they will become members." Other references in the reports are merely to the "purchaser" or "buyer." The reports do not provide conclusive evidence for either party's interpretation of "member of the public." One could read the phrase "in which they will become members" as assuming that the disclosures do not apply to buyers who already live in the association. The fact that this language

land, Senate Judiciary Proceedings Committee, Summary of Committee Report on S.B. 96 (Feb. 17, 1987). The Senate committee report describes the purpose of the bill as requiring "the vendor of a lot in a development subject to a homeowners association to make certain disclosures to the buyer concerning the existence and authority of the homeowners association." *Id.* It further states that "[t]he rights and obligations set forth in the bill may not be varied by agreement or waived." *Id.* Nowhere does the committee report discuss the implications for this requirement on buyers who already own homes within an association. An amendment to the bill, adopted in the Senate Judicial Proceedings Committee, added the phrase "who intends to occupy or rent the lot for residential purposes" after the words "a member of the public." *See* General Assembly of Maryland, Senate Judicial Proceedings Committee, Amendments to S.B. 96 (Feb. 17, 1987).

This change is explained, in part, by a February 5, 1987, letter, included in the bill file, from Roger D. Winston, the former chairman of the Subcommittee on Homeowners Associations for the Governor's Commission on Condominiums, Cooperatives, and Homeowners Associations, to Douglas Nestor, legal counsel to the House Judiciary Committee. In the letter, Mr. Winston offers several proposed changes to the bill, including adding the phrase "who intends to occupy or rent the lot for residential purposes" after "member of the public." He explains that the language "member of the public" was used to indicate that the disclosure requirements did *not* apply to developers. The pertinent part of the letter states

> An amendment had been proposed last year, and has been proposed again this year, by Roger Redden, the purpose of which is to exempt from the disclosure requirements of Section 11B–105 the situation where one developer conveys an entire parcel of land to another developer. Last year the

---

is not repeated in other places raises doubts about whether the authors of the report intended their language to be read in that manner. The authors may well have considered that buyers would ordinarily be first-time buyers and not buyers who already owned other lots in the development.

Subcommittee did not believe that this change was necessary because the existing introductory language to Section 11B–105 provides that the disclosure requirements set forth therein are only applicable to initial sales to members of the public. The "initial sale to member of the public" language was derived from the Maryland Condominium Act where such language had been interpreted by the Secretary of State's office as excluding sales in bulk to other developers. However, Roger Redden expressed the concern that since the phrase "to members of the public" was not defined, it was possible that someone would interpret this as applying to all sales by developers, even sales to other developers. To alleviate this potential problem, I suggest that on Page 4 at Line 33, after the word "public" the phrase "who intends to occupy or rent the lot for residential purposes" be inserted.

Although the letter concerns § 11B–105, the only difference between the two sections is the type of sale covered. Section 11B–105 covers an initial sale of a lot in a development containing more than 12 lots, whereas § 11B–106, at issue here, covers a contract for the resale of a lot within a development or the initial sale in a development with 12 or fewer lots. The language "who intends to occupy or rent the lot for residential purposes" was added to both provisions.[8]

Further evidence of the generally understood meaning of the disclosure requirements of the Act is provided by a 1987 opinion of the Attorney General of Maryland. 72 Md. Op. Atty. Gen. 158. "The evident intent of the provision is that a buyer be provided the facts that will allow the buyer to make a rational judgment about whether to contract for the particular house. This objective is satisfied so long as the buyer receives the required disclosures at a time when the buyer

---

8. Another letter of note, dated February 10, 1987, from the Washington Metropolitan Chapter of the Community Associations Institute, states that the legislation would benefit not only the buyer, but the seller as well. The seller "will be relieved, to a large extent, of the burden of later having to explain to the purchaser all the ramifications of membership in the homeowners association."

still has an opportunity to decide whether to enter a binding contract." *Id.* at 161. The opinion further states that "the seller has a duty to obtain and disclose to the buyer, prior to the formation of the contract, all of the information described in [the statute]." *Id.* at 162.

The opinion specifically addresses a situation in which the buyer does not acknowledge receipt of the disclosures:

> [Section] 11B–106 speaks of the seller's duty to "giv[e]" or to "provide" the buyer with the required information. [Section] 11B–107 is drafted in terms of the buyer's having "received" the disclosures. The intent, apparently, is that the seller deliver the disclosures into the buyer's actual possession. If actual delivery is made, the statutory requirement will have been satisfied even if the buyer refuses to acknowledge receipt. However, a prudent seller ought to have some proof of delivery.

*Id.* at 163.

Considering the plain language of § 11B–106, its legislative history, and the surrounding provisions of the Act, we conclude that Mr. Hurwitz was a buyer who was protected by the Act's disclosure requirements. There is nothing in the plain language of the statute, or in the legislative history of the Act, that suggests lawmakers intended to exclude a person such as Mr. Hurwitz, a non-developer who already owned other lots in the development. The sellers' desired construction of the Act would require us to add language to the statute that is not already there, violating one of the cardinal rules of statutory interpretation. *See Gardner v. State,* 420 Md. 1, 9, 20 A.3d 801 (2011) (quoting *State v. Johnson,* 415 Md. 413, 421, 2 A.3d 368 (2010)) ("We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application.").

■ The sellers argue that this result violates a separate canon of statutory construction, which requires that a "statute must be given a reasonable interpretation, not one that is

absurd, illogical or incompatible with common sense." *Walker*, 432 Md. at 615–16, 69 A.3d 1066 (2013) (quoting *Green v. Church of Jesus Christ of Latter–day Saints*, 430 Md. 119, 135, 59 A.3d 1001 (2013)). They argue that this buyer, as a member of the homeowners association, would have already received all the necessary disclosures. They claim "it is unreasonable to believe that the General Assembly intended to permit an 'insider' HOA member such as Hurwitz to cancel the contract simply because [the sellers] did not perform the perfunctory act of delivering him documents and information which he already possessed or to which he had ready access."

We conclude that the result reached by the Court of Special Appeals with respect to the meaning of the applicable statutes is not "absurd, illogical or incompatible with common sense." The law may be overinclusive, providing disclosures to buyers, such as Mr. Hurwitz, who might already be aware of much of the information contained therein. But that, in itself, is not an absurd result. As the Court of Special Appeals noted, "there are sound reasons why the Act should require a seller to provide disclosures even to a buyer who is already a member of the HOA." *Lipitz*, 207 Md.App. at 223, 52 A.3d 94. These could include "(1) if the buyer did not obtain the covenants when purchasing his previous home; (2) if the buyer did not use the previous lot for residential purposes; or (3) if the covenants and disclosures changed since the buyer last bought his previous home." *Id.* at 224, 52 A.3d 94. The fact that these rationales might not apply in this buyer's case does not mean that the interpretation is otherwise absurd. "This policy avoids a situation where a buyer *thinks* he knows all of the information provided in the disclosures, but does not actually know this information." *Id.* at 222, 52 A.3d 94. The law does not place the burden on a buyer to retrieve these disclosures, even if they are readily available to him.

The statute that is applicable here is cast in broad terms with the specific objective of providing meaningful protection to members of the public. We will not dilute that intended effect by adopting an interpretation that would engraft excep-

tions not contemplated by a legislature clearly intent on providing expansive protections.

## III.

■ Our conclusion that Mr. Hurwitz was "a member of the public" who should have received the statutory disclosures does not resolve this case. The sellers assert equitable estoppel as a bar to the buyer's defense of their breach of contract claim. They allege in their amended complaint that they "made attempts to provide Mr. Hurwitz with information required by the Act," and that "Mr. Hurwitz declined such information stating that he already had those materials." Accordingly, the sellers contend that Mr. Hurwitz is estopped from arguing that he had a statutory right to cancel the contract because the disclosure documents were not provided to him. Mr. Hurwitz counters that equitable estoppel "cannot be used to contradict the Act's express language that its rights cannot be waived, that its provisions cannot be varied by agreement, and that a seller cannot evade its requirements, limitations or prohibitions."

■ We first must consider whether equitable estoppel is applicable here. This Court has adopted the following definition of equitable estoppel:

Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 309, 936 A.2d 343 (2007) (quoting *Cunninghame v. Cunninghame,* 364 Md. 266, 289, 772 A.2d 1188 (2001)). "Equitable estoppel essentially consists of three elements: 'voluntary conduct or representation, reliance, and detriment.'" *Id.* at 310, 936 A.2d

343 (quoting *Mona Elec. Co. v. Shelton*, 377 Md. 320, 334, 833 A.2d 527 (2003)). It is "cognizable at common law either as a defense to a cause of action, or to avoid a defense." *Leonard v. Sav-A-Stop Servs., Inc.*, 289 Md. 204, 212, 424 A.2d 336 (1981) (quoting *Bitting v. Home Ins. Co.*, 161 Md. 56, 60, 155 A. 329 (1931)). In this case, the sellers are raising equitable estoppel to avoid a defense asserted by the buyer to their breach of contract claim.

In support of his argument, the buyer relies on several provisions in the statute. *See* § 11B-108(d) ("The rights of a purchaser under this section may not be waived in the contract and any attempted waiver is void."); § 11B-106(a) (the contract is "not enforceable by the vendor" unless disclosure requirements are met); § 11B-103 (noting "the provisions of this title may not be varied by agreement, and rights conferred by this title may not be waived"). Although waiver and estoppel may sometimes be used interchangeably, there are differences between these terms. *See Travelers Indem. Co. v. Nationwide Constr. Corp.*, 244 Md. 401, 413, 224 A.2d 285 (1966) (quoting *Gould v. Transamerican Assoc.*, 224 Md. 285, 295, 167 A.2d 905 (1961)) ("Waiver is closely inter-related and intertwined with estoppel. The distinction between them most frequently adverted to is that waiver rests upon the intention of the party, while estoppel rests upon a detrimental change of position induced by the acts or conduct of the party estopped."); *Crane Co. v. Onley*, 194 Md. 43, 50, 69 A.2d 903 (1949) (quoting *Benson v. Borden*, 174 Md. 202, 219, 198 A. 419 (1938)) (noting that "waiver does not necessarily imply that one has been misled to his prejudice or into an altered position," whereas "estoppel always involves this element"). The difference between these doctrines convinces us that the statutory language does not expressly prevent estoppel from being raised.

A review of our past case law further leads us to conclude that equitable estoppel can be raised as a defense to a claim based on the disclosure requirements of § 11B-106(b). On several occasions, we have applied equitable estoppel to cases involving defenses based on statutory requirements. *See*

*Cunninghame,* 364 Md. at 300, 772 A.2d 1188 (describing factors to be considered in order to determine whether a personal representative of an estate can be estopped from asserting a statute of limitations defense on a claim); *Crane,* 194 Md. at 50, 69 A.2d 903 (holding that the supplier to a contractor was estopped from asserting that a homeowner violated the Mechanic's Lien law by not paying the supplier for materials when the supplier told the homeowner to pay the contractor directly). Accordingly, we conclude that the sellers may assert equitable estoppel to counter the statutory defense raised by Mr. Hurwitz.

The buyer argues that even if the doctrine of equitable estoppel may be asserted, the sellers "could not satisfy its elements." The Court of Special Appeals agreed, concluding that as a matter of law the sellers could not have reasonably relied on the buyer's representations because the original offer from the buyer recited the requirement that the sellers provide the buyer with the disclosures and they should have been aware of their statutory burden to provide that information. *Lipitz,* 207 Md.App. at 231, 52 A.3d 94.

■ We disagree, and we conclude that under the circumstances of this case, it is for the trier of fact to determine whether the buyer is equitably estopped from walking away from this contract. It is on this point that we part ways with our colleagues. We observe that this case was disposed of through the Circuit Court's granting of a motion to dismiss. "In reviewing a trial court's grant of a motion to dismiss, 'we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party.'" *Kendall v. Howard County,* 431 Md. 590, 601, 66 A.3d 684 (2013) (quoting *Converge Servs. Group, LLC v. Curran,* 383 Md. 462, 475, 860 A.2d 871 (2004)). "We then determine whether the trial court was 'legally correct in its decision to dismiss.'" *Id.* at 601–02, 66 A.3d 684 (quoting *Washington Suburban Sanitary Comm'n v. Phillips,* 413 Md. 606, 618, 994 A.2d 411 (2010)).

The complaint alleges that the buyer struck out a box on the contract that contained the words "Homeowners Association Notice" and wrote next to it, "N.A." and his initials. The sellers allege that both sides in the sale believed that the Homeowners Association Act did not apply to the transaction. The buyer was given access to the property, including only a week before the settlement date, and "repeatedly conveyed his enthusiasm" to close on the deal. The sellers claim that they "made attempts to provide Mr. Hurwitz with information required by the Act" and that "Mr. Hurwitz declined such information stating that he already had those materials." The sellers claim that, in reliance on Mr. Hurwitz's representations, they stopped seeking out potential purchasers of the property, and that they ultimately sold the property for less money than had been offered by Mr. Hurwitz.

We conclude that the Circuit Court erred by granting a motion to dismiss based on the facts alleged in the complaint. Genuine questions of fact are raised as to when, how often, and in what manner the sellers offered the disclosure documents to the buyer, and if, and in what way, he declined to receive the materials. We are not a fact-finding court and it is not our duty to determine exactly what took place between the parties. We conclude that the sellers have alleged sufficient facts on which to base an equitable estoppel argument and defeat a motion to dismiss.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**